[No. 39530.   Department One.   April 25, 1968.]

THE STATE OF WASHINGTON, *Respondent,* v. THOMAS STATIONAK, *Appellant.*[*]

[*]Reported in 440 P.2d 457.

*Alfred McBee*, for appellant (appointed counsel for appeal).

*Harry A. Follman* and *K. R. St. Clair*, for respondent.

McGOVERN, J.—The defendant was charged by information with the crime of assault in the first degree as follows:

He, the said THOMAS STATIONAK a/k/a TOM STATION, in the County of Skagit, State of Washington, on or about the 12th day of September, 1966, did wilfully, unlawfully and feloniously, with intent to kill one Barbara Stevens, did assault said Barbara Stevens with a firearm, to-wit: a rifle, then and there loaded with powder and ball, which he, the said THOMAS STATIONAK a/k/a TOM STATION then and there had and held, and did then and there wilfully, unlawfully and feloniously with said rifle, shoot at, toward and into the body of said Barbara Stevens, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Washington.

To this charge the defendant entered a plea of not guilty. He was tried before a jury, convicted and sentenced to a penal institution of this state for a term of not more than 20 years.

Defendant and Barbara Stevens, the victim, dated steadily during the school year 1964-65. Although of the same age, Barbara was a senior and the defendant a sophomore, both at Anacortes High School. He was welcome in her home, had dinner there on several occasions, and initially maintained a satisfactory relationship with other members of her family.

In the fall of 1965, Barbara entered Skagit Valley College. She there involved herself in academic and social activities and, in doing so, became continually less enchanted with the defendant's company. He resented this fact, resented her dating other boys, was possessive, and argued with her frequently. It reached the point where every date occasioned a violent argument. By February 17, 1966, Barbara "no longer wanted to see him or have anything to do with him."

She said that on February 24, 1966, at her school, he handed her a note bearing the statement "I have a gun. You'd better come with me, or I will kill you." She refused. Later that day, at the police station, he told her "I will get you." Other brief encounters occurred between that date and the morning of the alleged assault.

Barbara testified that on September 12, 1966, at about 9 a.m., the defendant entered her family home and appeared in the doorway to her bedroom. He was holding a rifle. She was frightened and cried downstairs to her mother: "Tom is here. He has a gun." The defendant interrupted: "If you go for help, Mrs. Stevens, I'll kill her." He turned to the victim and insisted that she go with him, but she refused: "Tom, no. I won't go with you. You would have to kill me first. . . . When I said that, he stood there, and he just looked toward the rifle, turned it around this way (indicating); there was an interval, and then he shot me. . . . He turned and left and walked down the stairs."

The bullet entered her chest, the lower part of her right lung, hit a vertebra, and shattered the whole left side of her spinal cord. Barbara is paralyzed from the waist down.

Defendant claims five assignments of error, any one of which should entitle him to a new trial. They are argued, however, as but three in number and will be treated accordingly.

The court submitted to the jury the question of whether the defendant was guilty of the crime of assault in the first degree or assault in the second degree, a lesser included offense. The defendant asserts that an instruction on third degree assault should also have been given. He bases this argument on insistent testimony that he never knew the gun was loaded and, therefore, neither intentionally nor willfully intended murder or bodily harm; that when the elements of intent and willfulness are removed, and an assault still remains, that it constitutes third degree assault.

Since third degree assault is defined as one "not amounting to assault in either the first or second degrees,"[1]

---

[1] RCW 9.11.030 provides: "Every person who shall commit an assault or an assault and battery not amounting to assault in either the first or

if the facts of the case are such that defendant could have been found guilty of either first or second degree assault, then he could not have been found guilty of third degree assault.

A review of the record discloses ample evidence to support a verdict of assault in the first degree.[2] On different occasions the defendant had threatened to kill Barbara, he broke into her home, pointed a deadly weapon at her, it discharged and she was seriously injured. An inference of the intent to kill might clearly be derived from those facts.

■ Should the jury determine that those facts did not constitute a first degree assault, they would, however, certainly support a verdict of second degree assault.[3] We say this because we have previously held that one who points an apparently loaded gun at another within range may be guilty of second degree assault under RCW 9.11.020(4) even though the gun was not in fact loaded. It is the apparent present ability to give effect to the attempt that controls, not the actual ability. *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 125 P.2d 681 (1942); *State v. Shaffer*, 120 Wash. 345, 207 Pac. 229 (1922). We adhere to that rule.

Under all of the evidence then, the defendant was guilty of first or second degree assault or of none at all. There was no evidence which would justify the jury in returning a verdict of guilty of assault in the third degree. The pro-

---

second degrees, shall be guilty of assault in the third degree, . . . ."

[2]RCW 9.11.010 provides: "Every person who, with intent to kill a human being, or to commit a felony upon the person or property of the one assaulted, or of another—

"(1) Shall assault another with a firearm or any deadly weapon or by any force or means likely to produce death; or

"(2) . . . [S]hall be guilty of assault in the first degree . . . ."

[3]RCW 9.11.020 provides: "Every person who, under circumstances not amounting to assault in the first degree—

". . . .

"(4) Shall wilfully assault another with a weapon or other instrument or thing likely to produce bodily harm; or

". . . .

"Shall be guilty of assault in the second degree . . . ."

posed instruction on third degree assault was, therefore, properly refused.

It is next stated that the trial court erroneously instructed the jury as follows:

For the purpose of this case, the word "assault" means unlawfully using force to inflict bodily injury on another.

Shooting at, towards or into the body of another is an assault as that term is used in these instructions.

Defendant claims that this instruction is identical with one given in *State v. St. Peter*, 63 Wn.2d 495, 496, 387 P.2d 937 (1963), where we held that "this statement, standing alone, is incorrect. The shooting must be accompanied by the requisite felonious intent." We would add, however, that in both the *St. Peter* case and here, such statement did not stand alone. It was accompanied by other sufficiently clarifying instructions. The jury was here advised that "[s]pecific intent to take life is an indispensable and necessary element of the crime of first degree assault," and that to convict the defendant, they would have to find that he "wilfully, unlawfully and feloniously assaulted one Barbara Stevens, . . . ." The assignment of error is, therefore, without merit.

Defendant then asserts that the court erred in refusing to give either of two proposed instructions,[4] each of which would have advised the jury that where a defendant is guilty of a crime, but a doubt exists as to which of two degrees thereof he has committed, then the jury should convict him only of the lesser. We agree.

---

[4]Instruction No. 15: "You are instructed that the law provides that in the event an accused shall be deemed proven beyond a reasonable doubt to be guilty of some degree of a crime, but a reasonable doubt shall exist as to the degree of crime of which such one is guilty, then there shall be a conviction only of the lesser degree of crime."

Instruction No. 16: "In arriving at your verdict, if you should find that the defendant assaulted Barbara Stevens, and have a reasonable doubt as to what degree of assault the defendant is guilty, he should be given the benefit of such doubt and may be convicted only of such lesser degree of the crime charged concerning which you do not have reasonable doubt of guilt."

■  Not only does the principle embodied in each of the proposed instructions represent the legal weight of authority in our country, but it also represents our statutory law and our case law. As concluded in Annot. 20 A.L.R. 1258-59 (1922):

> The weight of authority is to the effect that if the evidence admits of a conviction of a lower degree than that charged, or of an included offense, the jury should be instructed that, in case of a reasonable doubt between two degrees or offenses, they are to convict of the lesser only, *and a general instruction that the guilt of the accused must be shown beyond a reasonable doubt is not sufficient.*  (Italics ours.)

Here the defendant was charged with first degree assault, but the evidence would equally admit of a conviction of the lower, and included, offense of second degree assault.

And RCW 10.58.020 concerning criminal procedure and evidence provides that:

> Every person charged with the commission of a crime shall be presumed innocent until the contrary is proved by competent evidence beyond a reasonable doubt; *and when an offense has been proved against him, and there exists a reasonable doubt as to which of two or more degrees he is guilty, he shall be convicted only of the lowest.* (Italics ours.)

Finally, in *State v. Rader*, 118 Wash. 198, 206, 203 Pac. 68 (1922), a case involving, as here, an included offense, we reversed a conviction where the trial court declined to instruct the jury on the matter of reasonable doubt as between degrees, just as the court refused to do here. We then stated that:

> The appellant requested an instruction couched in the foregoing language. [RCW 10.58.020.] This the court declined to give as a whole, giving only that part of it which relates to the presumption of innocence. This was error, and was not cured by the verdict returned. Manslaughter is a degree within the crime of murder, and the request was not only within the statute, but within the general rule of law.

We still have the statute and it still constitutes the general rule of law.

For the error indicated, the judgment is reversed and a new trial awarded.

FINLEY, C. J., ROSELLINI and HALE, JJ., and BRADFORD, J. Pro Tem., concur.