[No. 39695.   Department One.   November 14, 1968.]

THE STATE OF WASHINGTON, *Respondent,* v. MELVIN WAYNE IRELAND, *Appellant.*\*

\*Reported in 447 P.2d 170.

*Pebbles, Swanson & Lindskog,* by *Jerome L. Buzzard,* for appellant (appointed counsel for appeal).

*Harold R. Koch* and *Fred D. Gentry,* for respondent.

WEAVER, J.—Defendant appeals from his conviction and sentence for first degree assault.

The facts are simple. About noon on February 21, 1967, after a private conversation in the home of a mutual friend, defendant stabbed his estranged wife in the back with a pocket knife as she preceded him out of a room. Defendant's wife, now divorced, spent 23 days in the hospital.

In a signed statement (the admissibility of which is questioned on this appeal), defendant stated:

I stabbed her in the back with no intentions of killing her. I wanted her to feel pain the way I had been feeling pain for the last month and a half.

At trial, defendant had a different story. He testified:

[W]e had finished our conversation and she started to walk out [of the room] and I got up to walk out behind her and she slipped or something on a toy or something or other. And I had the knife, cleaning my fingernails. And she slipped and fell back into me and into the knife.

The knife pierced a lung. The attending surgeon testified that "the wound had to be a depth of not less than two inches and probably not over three inches."

Defendant's wife denied that she had slipped as she was leaving the room. She fell to the floor after the knife entered her back.

Thus, a question for the jury was presented. The jury believed the wife; it did not believe the defendant.

Defendant testified: "I got scared, so I left." He fled in his automobile to his sister's home in Oxbow, Oregon; his arrival was apparently preceded by news of the incident. His sister had telephoned the police.

The following appears (and is not denied) in a supplemental brief filed by respondent in this appeal: About 7:30 a.m., February 22, 1967 (a holiday), defendant was arrested and taken by the Oregon police to the county jail at Baker,

Oregon; that afternoon he was arraigned before a justice of the peace in Baker, upon a fugitive warrant issued by the Thurston County Superior Court at Olympia; defendant signed a consent for his return to the state of Washington.

Although the brief states that defendant was advised of his constitutional rights by the Oregon police at the time of his arrest, and by the justice of the peace at the time of his arraignment on February 22, 1967, we approach the problem from the standpoint that the warnings were not given or, if given, were not constitutionally sufficient.

The thrust of defendant's first of two assignments of error is that the lack of proof that the Oregon authorities alerted defendant of his constitutional rights defiled his statement to the Olympia police so that it was inadmissible in evidence. We do not agree. The contention is based upon pure conjecture.

Officers Fred Derrick and Harold Ron Schultz of the Olympia police department interviewed defendant February 23 at 8:45 p.m., almost a day and a half after defendant had talked to the Oregon police. The interview was held in the sheriff's anteroom in the Baker County courthouse. Officer Derrick testified:

I said first, "You can discuss anything you want or you can wait until you get to Olympia to make a statement."

Defendant gave the Olympia officers a written statement in which he admits stabbing his wife. A portion of this statement is quoted earlier in this opinion.

Pursuant to Criminal Rule for Superior Court 101.20W, RCW vol. 0, the trial court held a hearing, in the absence of the jury, to determine whether, in the light of the surrounding circumstances, the confession was voluntary. Officers Derrick and Schultz testified that before taking the statement, defendant was warned of his constitutional rights. In fact, appellate counsel, who did not try the case in the superior court, concedes in his opening brief that:

The record further reflects that appellant was *properly* advised of his rights by the officers of the Olympia Police Department prior to taking a statement from the appellant. (Italics ours.)

Our examination discloses that the record sustains this concession.

The only reference in the record to possible statements made by defendant to the Oregon authorities appears in the cross-examination of Officer Schultz. He testified that he "believed" defendant had made a statement the day before because the Oregon sheriff had so stated. Officer Schultz said that he "couldn't say for sure" whether defendant had been advised of his rights because he (Schultz) "was not there when he (defendant) gave the statement."

The trial court ruled that the written statement of defendant given to the Olympia police officers was admissible in evidence.

When the jury was recalled, defendant's written statement was introduced. Defendant, having taken the stand, testified in answer to the question "Why did you make that statement if you actually didn't stab her?" replied, "Because I had wanted to and I had a feeling of guilt *because it had happened,* so I was feeling real guilty at the time. I just didn't care." (Italics ours.)

There was nothing introduced at the trial about statements, if any, made by defendant to the Oregon authorities; yet, it is upon the bare assertion that he was interrogated by them that it is urged his confession to the Olympia police is inadmissible.

This contention is based upon *Westover v. United States,* 384 U.S. 436, 494, 16 L. Ed. 2d 694, 86 Sup. Ct. 1602 (1966) (companion case to *Miranda v. Arizona,* 384 U.S. 436).

The facts of this case distinguish it from *Westover, supra.* In *Westover,* defendant was arrested by city police in the morning; he was placed in a police lineup; he was "booked" just before noon; he was interrogated that night; the next day he was interrogated by the city police throughout the morning. He was then turned over to members of the FBI, who continued the interrogation. After having been given the constitutional warnings by the FBI that are now required by the Supreme Court of the United States, he signed a confession 2½ hours later. The court

held that the warning came too late in the interrogation process for there had been "a continuous period of questioning."

█ In the instant case, there was not a continuous period of questioning. In fact, in *Westover, supra,* the court recognized the possibility of a situation such as we are now considering. The court said:

> We do not suggest that law enforcement authorities are precluded from questioning any individual who has been held for a period of time by other authorities and interrogated by them without appropriate warnings. (384 U. S. 496).

The argument, based upon conjecture, that the Olympia officers "were the beneficiaries of the pressure applied by the local in-custody interrogation" is dispelled by defendant's testimony at trial that he made the written statement "because I wanted to."

It was not error to admit defendant's written statement in evidence.

Defendant assigns error to the trial court's refusal to give his requested instruction upon third degree assault. We find no merit in this assignment of error. Our conclusion is supported by the rationale of our recent decision in *State v. Stationak,* 73 Wn.2d 647, 440 P.2d 457 (1968).

The judgment is affirmed.

ROSELLINI, HALE, and McGOVERN, JJ., and RYAN, J. Pro Tem., concur.