953 P.2d 450 (1998)
134 Wash.2d 725
STATE of Washington, Respondent,
v.
Reno TAMALINI, Petitioner.
No. 64303-2.
Supreme Court of Washington, En Banc.
Argued October 24, 1996.
Decided March 26, 1998.
*451 Anna-Mari Sarkanen, Seattle, Amicus Curiae for Washington Association of Criminal Defense Attorneys.
Nielsen, Broman & Associates, Eric Broman, Eric Nielsen, Seattle, for Petitioner.
Norm Maleng, King County Prosecutor, Donald Raz and Lee Yates, Deputies, Seattle, for Respondent.
ALEXANDER, Justice.
The issue we are confronted with here is whether the offenses of manslaughter in the first or second degree are lesser included offenses or inferior degrees of second degree felony murder. We conclude that they are not and, consequently, affirm the Court of Appeals.
The charge against Reno Tamalini that led to this appeal arose out of an altercation that Tamalini and two of his companions, Laeli Talaga and Pete Leaupepetele, had with Robert Jackson and Michael Hall. The altercation, which took place in the parking lot of a Seattle nightclub, resulted in Jackson sustaining severe injuries to his head. These injuries ultimately led to Jackson's death some six weeks later. As a consequence, Tamalini, Leaupepetele and Talaga were, together, charged with second degree felony murder "while committing and attempting to commit the crime of Assault in the Second Degree." Clerk's Papers at 4.
During trial, Hall and several patrons of the nightclub testified about the events that led to Jackson's death. Hall told the jury that he witnessed Tamalini holding a piece of concrete above his head as he stood over Jackson's body. Hall said that he then charged Tamalini and the two men engaged in a struggle until Hall was knocked unconscious.
Tamalini took the stand in his own defense and testified that he was so intoxicated on the night of the incident that his only recollection was being struck by a person or object and then waking up later in a car. Leaupepetele also took the stand and told the jury that he fought with Jackson in self-defense after Jackson attacked him with a beer bottle.
Talaga and Tamalini proposed a jury instruction which read, in pertinent part, as follows:
the defendant may be found guilty of any lesser crime, the commission of which is necessarily included in the crime charged....
The crime of second degree murder necessarily includes the lesser crimes of first degree manslaughter and also second degree assault; first degree manslaughter necessarily includes the lesser crime of second degree manslaughter....
When a crime has been proven against a person and there exists reasonable doubt as to which of two or more degrees or crimes that person is guilty, he or she shall be convicted only of the lowest degree....
Supplemental Br. of Pet'r at App. B. The trial court refused to submit the proposed instruction to the jury, concluding that, "I just cannot find from reading the statutes that they [manslaughter and felony murder statutes] are, in factthey necessarily contain the same elements, the lesser included. And I'm not going to give the manslaughter lesser included." Verbatim Report of Proceedings at 1245-46.
The jury found Tamalini and Leaupepetele guilty of second degree felony murder. It acquitted Talaga. Tamalini and Leaupepetele appealed separately to Division One of the Court of Appeals and their convictions *452 were both affirmed. State v. Tamalini, No. 31661-3-1, 1996 WL 537228 (Wash.Ct.App. June 3, 1996). Tamalini thereafter petitioned this court for review. We granted his petition "solely on the issue of whether the trial court erroneously failed to instruct the jury on manslaughter." Supreme Court Order Cause No. 64303-2, 129 Wash.2d 1029, 922 P.2d 97 (Sept. 4, 1996).

I. Is First or Second Degree Manslaughter a Lesser Included Offense of Second Degree Felony Murder?
The right to have a lesser included offense instruction presented to the jury is, in appropriate cases, a statutory right. See State v. Bowerman, 115 Wash.2d 794, 805, 802 P.2d 116 (1990). This right arises out of RCW 10.61.006, which states "[i]n all other cases the defendant may be found guilty of an offense the commission of which is necessarily included within that which he is charged in the indictment or information."
Either the defense or the prosecution is entitled to request a lesser included offense instruction and we have developed a two-part test for determining when such an instruction is warranted: "First, each of the elements of the lesser offense must be a necessary element of the offense charged [legal prong]. Second, the evidence in the case must support an inference that the lesser crime was committed [factual prong]." State v. Workman, 90 Wash.2d 443, 447-48, 584 P.2d 382 (1978) (citations omitted). Because the trial court rejected Tamalini's proposed instruction on the basis that first and second degree manslaughter are not, as a matter of law, lesser included offenses of second degree felony murder, we review the claimed error de novo. State v. Lucky, 128 Washed 727, 731, 912 P.2d 483 (1996), overruled on other grounds by State v. Berlin, 133 Wash.2d 541, 947 P.2d 700 (1997) (citing Braden v. Rees, 5 Wash.App. 106, 110, 485 P.2d 995, review denied, 79 Wash.2d 1009 (1971)).
Tamalini's contention that first and second degree manslaughter are lesser included offenses of second degree felony murder fails the legal prong of the Workman analysis. Our conclusion in that regard is fully supported by our previous decision in State v. Davis, 121 Wash.2d 1, 6, 846 P.2d 527 (1993). Davis, like Tamalini, was charged with second degree felony murder with second degree assault as the predicate felony. He requested a jury instruction almost identical to that sought here by Tamalini. The trial court refused to give the proposed instruction and Davis was ultimately convicted of second degree felony murder. Davis thereafter appealed to the Court of Appeals, Division One, which reversed his conviction, concluding that it was error to fail to give the proposed instruction. State v. Davis, 64 Wash.App. 511, 827 P.2d 298 (1992), rev'd 121 Wash.2d 1, 846 P.2d 527 (1993). On review, we reversed the Court of Appeals and reinstated Davis's conviction, concluding that there are no lesser included offenses to second degree felony murder. Davis, 121 Wash.2d at 6, 846 P.2d 527.
In Davis, we relied, in part, on State v. Dennison, 115 Wash.2d 609, 801 P.2d 193 (1990) and State v. Frazier, 99 Wash.2d 180, 661 P.2d 126 (1983),[1] cases in which we held that both degrees of manslaughter are not lesser included offenses of first degree *453 felony murder because the specific mental elements of first and second degree manslaughter are not elements of first degree felony murder. Applying that rationale to second degree felony murder, which does not structurally differ from first degree felony murder, we concluded that all of the elements of the lesser offenses were not necessary elements of the greater offense. Davis, 121 Wash.2d at 6-7, 846 P.2d 527.
Davis is controlling. We conclude, therefore, that the trial court did not err in refusing to instruct the jury that first and second degree manslaughter are lesser included offenses of second degree felony murder.

II. Is First or Second Degree Manslaughter an Inferior Degree of Second Degree Felony Murder?
Tamalini's second contention is that the trial court erred in refusing to give the proposed jury instruction on the basis that first and second degree manslaughter are inferior degrees of second degree felony murder. Preliminarily, we note that Tamalini's proposed instruction does not contain the words "inferior degree." Consequently, it is technically a stretch to say that Tamalini requested an instruction that first and second degree manslaughter are inferior degree offenses of second degree felony murder. A defendant cannot claim that the trial court erred in refusing an instruction he did not offer unless the failure to so instruct is violative of a constitutional right. State v. Scott, 93 Wash.2d 7, 14, 604 P.2d 943, cert. denied 446 U.S. 920, 100 S.Ct. 1857, 64 L.Ed.2d 275 (1980). Although Tamalini does not claim that a constitutional right was violated by the trial court when it declined to give the proposed instruction, we nevertheless choose to consider the claimed error because the terms "inferior degree offense" and "lesser included offense" have often been used interchangeably. Thus it is likely that Tamalini intended his proposed instruction to apply to both.[2]
As a general rule, criminal defendants are entitled to notice of the charge they are to meet at trial and may be convicted only of those crimes charged in the information. State v. Irizarry, 111 Wash.2d 591, 592, 763 P.2d 432 (1988). However, RCW 10.61.003 provides that a criminal defendant may also be convicted of a crime which is an inferior degree of the crime charged, the statute reading as follows: "Upon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment Or information, and guilty of any degree inferior thereto, or of an attempt to commit the offense."[3]
As noted above, the terms "lesser included offense" and "inferior degree offense" have often been used interchangeably. See State v. Berge, 25 Wash.App. 433, 607 P.2d 1247, review denied 94 Wash.2d 1016 (1980). See also State v. Dodd, 53 Wash. App. 178, 181, 765 P.2d 1337 (1989); State v. Boyd 21 Wash.App. 465, 468, 586 P.2d 878 (1978); State v. Humphries 21 Wash.App. 405, 407, 586 P.2d 130 (1978). This confusion of terms is unfortunate because it blurs the difference between the two. The test, as we noted above, for determining if a crime is a lesser included offense is the Workman test. On the other hand, a defendant is entitled to an instruction on an inferior degree offense when (1) the statutes for both the charged offense and the proposed inferior degree offense "proscribe but one offense" State v. Foster, 91 Wash.2d 466, 472, 589 P.2d 789 (1979)); (2) the information charges an offense that is divided into degrees, and the *454 proposed offense is an inferior degree of the charged offense (see Foster, 91 Wash.2d at 472, 589 P.2d 789); and (3) there is evidence that the defendant committed only the inferior offense (State v. Daniels, 56 Wash.App. 646, 651, 784 P.2d 579, review denied, 114 Wash.2d 1015, 791 P.2d 534 (1990)).
Tamalini, as we observed above, contends here that first and second degree manslaughter are inferior degrees of second degree felony murder and that he was entitled to a jury instruction so stating. The Court of Appeals rejected this argument, relying on its previous decision in State v. McJimpson, 79 Wash.App. 164, 901 P.2d 354 (1995), review denied, 129 Wash.2d 1013, 917 P.2d 576 (1996). It concluded there that the manslaughter statutes and the felony murder statutes proscribe significantly different conduct and thus define separate and distinct crimes. McJimpson, 79 Wash.App. at 171-72, 901 P.2d 354. See also State v. Campas, 59 Wash.App. 561, 564, 799 P.2d 744 (1990) (holding that the argument that first degree manslaughter is an inferior degree of felony murder is "novel but unpersuasive").
Tamalini contends that the Court of Appeals was incorrect in holding here and in McJimpson that first and second degree manslaughter are not inferior degrees of felony murder. His primary argument in that regard is that all degrees of murder and manslaughter constitute the single offense of homicide. See RCW 9A32.010. The degrees of homicide, he suggests, are the two degrees of murder and the two degrees of manslaughter. He argues, additionally, that the Court of Appeals's decision in McJimpson is contrary to its own opinion in State v. Ieremia, 78 Wash.App. 746, 899 P.2d 16 (1995), review denied, 128 Wash.2d 1009, 910 P.2d 481 (1996), specifically its statement in a footnote that "[s]ome lesser degree crimes simply involve a less culpable mental state homicide, for examplebut the elements of the lesser crimes are otherwise the same as the greater." Ieremia, 78 Wash.App. at 754 n. 2, 899 P.2d 16.
We reject Tamalini's arguments, concluding that the two degrees of manslaughter are not inferior degrees of first or second degree felony murder. In reaching our decision, we adopt the sound reasoning of the Court of Appeals in McJimpson. We do so because we are satisfied that although the second degree felony murder statute and the manslaughter statutes proscribe the killing of another human being generally, the particular statutes are directed to significantly differing conduct of defendants. On the one hand, an individual commits second degree felony murder when, in "the course of ... or in immediate flight" from any felony not listed in RCW 9A.32.030, that individual or another participant to the crime "causes the death of a person other than one of the participants." RCW 9A.32.050(1)(b). On the other hand, a person commits first degree manslaughter when he or she recklessly causes death or intentionally and unlawfully kills an unborn child by inflicting injury on the mother. RCW 9A.32.060. A person commits second degree manslaughter where, with criminal negligence, the person causes a death. RCW 9A.32.070. Plainly, the second degree felony murder statute and the two statutes defining the degrees of manslaughter proscribe separate and distinct offenses. They do not proscribe just one offense.
The conclusion we reach here is supported by our previous holding in Brandon v. Webb, 23 Wash.2d 155, 165-66, 160 P.2d 529 (1945). There, the defendant pleaded guilty to second degree murder. Nine years later, he petitioned for a writ of habeas corpus, arguing that his conviction was void because "no jury was ever impaneled to determine the `degree' of murder of which he was guilty." Brandon, 23 Wash.2d at 158, 160 P.2d 529. In upholding the defendant's guilty plea, conviction and sentence, we said, "While manslaughter is sometimes loosely spoken of as a degree of murder, it is actually not so, and has never been so denominated by any statute of this state. Although it is an included offense within the crime of murder, it is nevertheless a distinct crime of itself." Brandon, 23 Wash.2d at 165, 160 P.2d 529 (emphasis added).
The dissent urges us to "[l]et the jury decide," arguing that because Tamalini testified he was so intoxicated he could not remember what had occurred, he was entitled to an instruction on manslaughter as an inferior *455 degree of second degree felony murder. Dissenting op. at 459. According to the dissent, Tamalini's recklessness or negligence, if the jury found either, would make him "guilty of manslaughter alone." Dissenting op. at 459. That overlooks RCW 9A.36.031, the statute that defines the felony offense of third degree assault. It says, in pertinent part, that one commits the offense of third degree assault when he or she:
(d) With criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm; or
. . . .
(f) With criminal negligence, causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering[.]
(Emphasis added). If, as the dissent suggests, Tamalini was so intoxicated that he could not have intended to assault the victim, a jury might well conclude that he committed a predicate felony, third degree assault, if it found that he acted with criminal negligence.[4]
We are also satisfied that manslaughter is not an inferior degree of felony murder simply because manslaughter and murder are both included in the statutory definition of homicide. We specifically reject Tamalini's argument to the contrary and note with approval the McJimpson court's statement that the location of a statute in the criminal code is not determinative of whether a certain crime is an inferior degree offense of another crime. McJimpson, 79 Wash. App. at 172, 901 P.2d 354.[5] We note also that Tamalini's reliance on the language in the footnote to its decision in Ieremia is misplaced. McJimpson was decided by the Court of Appeals after Ieremia was decided. If the Court of Appeals had intended to transport the thought behind the footnote in Ieremia to McJimpson, it could have done so. It did not.
Tamalini argues, finally, that the Court of Appeals should not have concluded that McJimpson controls here because the trial court gave the jury an instruction *456 which defined homicide as including manslaughter.[6] This instruction, according to Tamalini, became the law of the case and thus rendered its conclusion that manslaughter is not an inferior degree of felony murder contrary to the law of the case. See State v. Ng, 110 Wash.2d 32, 39, 750 P.2d 632 (1988) (holding that where the State raises no challenge to the trial court's instruction, it becomes the law of the case).
We disagree. The definition of homicide contained in the trial court's instruction merely corresponds to the statutory definition of that term. While Tamalini is correct in stating that instructions not objected to become, the law of the case, his argument that this instruction trumps the holding that first and second degree manslaughter are not inferior degree offenses of second degree felony murder is simply a way of restating his previous argument that murder and manslaughter are all degrees of the crime of homicide. We reject the argument under this guise as well.
The Court of Appeals is affirmed.
DURHAM, C.J., and DOLLIVER, SMITH, GUY and TALMADGE, JJ., concur.
SANDERS, Justice (dissenting).
The majority holds manslaughter is not an inferior degree of felony murder; however, there is much precedent to the contrary requiring this dissent.
Sub silentio overruling an established line of cases, the majority disapproves and eliminates a frequently used jury instruction without sufficient justification. As the majority's author recently stressed, stare decisis is a "bedrock" principle of our legal system which counsels us not to jettison established case doctrine without sound justification. See State v. Berlin, 133 Wash.2d 541, 947 P.2d 700 (1997) (Alexander, J., dissenting).
Our inferior degree statute does not define "degree." See RCW 10.61.003.[1] Degree, however, does not and never has meant simply a legislative designation such as `third degree" or "fourth degree." Indeed, when the inferior degree statute was originally passed in 1854 our criminal code did not statutorily label crimes by degrees at all. See Code of 1854, at 77-97. Rather the common law distinguished whether one crime was an inferior degree of another.[2] Nor does the majority seem to disagree. In fact the majority cites the common law test which holds one crime is an inferior degree of another if both: (1) proscribe but one offense and (2) are not separate and distinct. Majority at 454 (citing State v. Foster, 91 Wash.2d 466, 472, 589 P.2d 789 (1979)). Although the majority correctly states the test, it errs by not applying it.
The common law viewed murder and manslaughter as varying degrees of homicide. See, e.g., People v. Schleiman, 197 N.Y. 383, 385, 90 N.E. 950, 951 (1910) ("It has also been customary for trial judges to regard the various degrees of manslaughter as lesser degrees of the crime of felonious homicide."); State v. Daniels, 12 Kan.App.2d 479, 753 P.2d 300, 302 (1987) ("[T]he court look[s] to common-law precedents to determine that manslaughter is a lesser degree of murder, both being part of the generic crime of homicide.").
A long line of Washington cases follows this rule including State v. Pepoon, 62 Wash. 635, 640, 114 P. 449 (1911), wherein we held, "It is no doubt true that the crime of murder includes the lesser crimes of murder in the second degree and of manslaughter, and it is equally true that the jury has a right to determine the degree of crime which *457 was committed." To the same effect is State v. Rader, 118 Wash. 198, 206, 203 P. 68 (1922) ("Manslaughter is a degree within the crime of murder."); State v. Gallagher, 4 Wash.2d 437, 448, 103 P.2d 1100 (1940) ("It is unnecessary to cite the numerous authorities, and quote therefrom, sustaining the trial court's submission of the issue of manslaughter [as a lesser degree of murder] to the jury."), as well as State v. Robinson, 12 Wash. 349, 351-52, 41 P. 51, 41 P. 902 (1895), overruled in part on other grounds by State v. Ash, 68 Wash. 194, 122 P. 995 (1912); State v. McPhail 39 Wash. 199, 81 P. 683 (1905); State v. Gottstein, 111 Wash. 600, 602, 191 P. 766 (1920); State v. Foley, 174 Wash. 575, 579, 25 P.2d 565 (1933); State v. Scheeler, 45 Wash.2d 661, 663, 277 P.2d 341 (1954); State v. Sill, 47 Wash.2d 647, 651-52, 289 P.2d 720 (1955); and State v. Berry, 52 Wash.2d 748, 755, 328 P.2d 891 (1958).
We most recently reaffirmed this principle in State v. Stationak, 73 Wash.2d 647, 652, 440 P.2d 457 (1968) ("`Manslaughter is a degree within the crime of murder, and the request [for a lowest degree instruction] was not only within the statute, but within the general rule of law.' We still have the statute and it still constitutes the general rule of law.") (quoting State v. Rader, 118 Wash. 198, 206, 203 P. 68 (1922)).
The common law held murder and manslaughter were varying degrees of one another because both proscribe the same offense, homicide or unlawful killing. The only difference between the two is mental culpability. See 1 Sir Matthew Hale, Knt., The History of the Pleas of the Crown 449 (1st Am. ed. 1847) ("Murder and manslaughter differ not in kind or nature of the offense, only in the degree...."); State v. Utter, 4 Wash. App. 137, 139-40, 479 P.2d 946 (1971) ("The actus reus is the culpable act itself.... In the present case, the appellant was charged with second-degree murder and found guilty of manslaughter. The actus reus of both is the samehomicide."); State v. Ieremia, 78 Wash.App. 746, 754 n. 2, 899 P.2d 16 (1995) ("[s]ome lesser degree crimes simply involve a less culpable mental statehomicide, for example"), review denied, 128 Wash.2d 1009, 910 P.2d 481 (1996); People v. Ray, 14 Cal.3d 20, 533 P.2d 1017, 1021, 120 Cal.Rptr. 377 (1975) ("The critical factor in distinguishing the degrees of a homicide is thus the perpetrator's mental state.").[3]
Thus, all authority agrees manslaughter is an inferior degree of murder.[4] The remaining question is whether the same is true for felony murder. Precedent holds it is. Felony murder is simply a statutory way of committing murder. See, RCW 9A.32.050(1) (a person commits second degree murder by (a) intentionally lolling someone or (b) causing someone's death during a felony).[5]See also State v. Berlin, 133 Wash.2d 541, 552-53, 947 P.2d 700 (1997) (second degree felony murder and second degree intentional murder constitute the same crime, second degree murder).
In State v. Greer, 11 Wash. 244, 247, 39 P. 874 (1895) we held manslaughter is a lesser degree of murder regardless of which statutory murder alternative the defendant was charged. Greer was charged with first degree murder by poison. At that time first degree murder could be committed by any one of three statutory alternatives: (1) premeditated killing; (2) murder by poison; and (3) first degree felony murder. Hill's Gen. Stat. (1891); Hill's Penal Code § 1. The state argued this particular alternative of *458 first degree murder had no lesser degree crimes. But the court disagreed, reasoning:
[M]urder in the first degree, however it may be committed, is the crime which is defined in the section which provides that one of the methods by which it may be committed is by causing the death of a person by the administration of poison. Such being the fact, there is no distinction between the crime of murder in the first degree when so committed and the crime of murder in the first degree when: committed by other means. The language of the statute is that every person who shall kill another under certain circumstances shall be guilty of murder in the first degree, and there is ho distinction as to the crime growing out of the means employed for its commission. We are, therefore, of the opinion that the crime set out in the statute is a single one and that, by whatever means it may have been committed, it includes the crime of murder in the second degree and manslaughter, as thereafter defined in the statute.
Greer, 11 Wash. at 246-47, 39 P. 874.
Under Greer manslaughter is a lesser degree of murder regardless of which alternative mode of murder defendant is charged. It makes no difference whether defendant is charged with intentional murder or felony murder as "[m]urder in any form is the felonious killing of a human being." State v. Rader, 118 Wash. 198, 203, 203 P. 68 (1922). Indeed, in State v. Howard, another case on point, this court applied the rule enunciated in Greer and held a manslaughter instruction was properly given as a lesser degree of first degree felony murder, State v. Howard, 33 Wash. 250, 260-61, 74 P. 382 (1903). In yet another case, directly on point, this court in State v. Cooky, 165 Wash. 638, 645, 5 P.2d 1005 (1931), citing State v. Greer and State v. Howard, held a manslaughter instruction was properly given as a lesser crime instruction in that first degree felony murder case.
State v. Berry, 52 Wash.2d 748, 755, 328 P.2d 891 (1958), another case directly on point, held a manslaughter instruction proper in a second degree felony murder case as a lesser degree. In Berry the defendant was charged with second degree felony murder for killing in the course of second degree assault The jury was given a manslaughter instruction as a lesser degree, and the jury acquitted of felony murder but convicted defendant of manslaughter. On appeal defendant asserted the manslaughter instruction should not have been given. We disagreed, found the manslaughter instruction was properly given as a lesser degree of felony murder, and affirmed. Id. at 755, 328 P.2d 891 (manslaughter is a "lesser degree of the crime charged in the information [felony murdfer]."). Until today Berry has been the law in Washington. Under Berry and its predecessors, manslaughter is a lesser degree of felony murder.[6]
However, the majority ignores the binding authority of our highest court in favor of two recent opinions from the Court of Appeals. State v. McJimpson, 79 Wash.App. 164, 901 P.2d 354 (1995), review denied, 129 Wash.2d 1013, 917 P.2d 576 (1996), and State v. Campas, 59 Wash.App. 561, 799 P.2d 744 (1990), review granted, 118 Wash.2d 1014, 823 P.2d 1068 (1992). Majority at 454. In Campas the Court of Appeals declared, in a single sentence, without citing a single case, that manslaughter is not a lesser degree of felony murder and defendant's assertion to the contrary "is novel but unpersuasive." Campas, 59 Wash.App. at 564, 799 P.2d 744. McJimpson, with analysis only slightly more sophisticated, held the same. 79 Wash.App. at 171-72, 901 P.2d 354. Remarkably, neither Campas nor McJimpson cited Berry or any other relevant case on lesser degrees of murder. Yet even if Campas or McJimpson had cited Berry or any other governing case, neither could have altered the rule in Berry as it is elementary that the Court of Appeals cannot overrule cases from this court. State v. Hairston, 133 Wash.2d 534, 539, 946 P.2d 397 (1997). Campas and McJimpson are contrary to Supreme Court precedent and therefore merit disapproval.
*459 The majority claims felony murder and manslaughter proscribe different activity as one involves causing a death through reckless or criminally negligent conduct while the other causes a death through perpetrating a felony. Majority at 454. Yet, at their cores, both proscribe the unlawful killing of another. The meaningful difference between the two is the level of moral culpability attached to each. Our law adopts the legal fiction that causing a death during a felony is morally the same as causing a death intentionally or by premeditation. Thus, felony murder is the act of causing a death with that level of moral culpability required to constitute first or second degree murder. Manslaughter is causing a death with less culpability. Murder in any form and manslaughter are indeed varying degrees of homicide and should be treated as such. Let the jury decide.
The gravity of the majority's holding cannot be gainsaid. Never again will a felony murder case see a manslaughter instruction. Thus we will have the anomalous situation where manslaughter instructions may be given in all murder cases[7] except those charging under the felony murder theory alone. Such holds true even in cases where the evidence supports a manslaughter conviction. State v. Berry, 52 Wash.2d 748, 328 P.2d 891 (1958) was such a case as the jury there acquitted on second degree felony murder while convicting on manslaughter. State v. Paschall, 197 Wash. 582, 592-93, 85 P.2d 1046 (1939) was much the same. In such cases manslaughter is the true verdict and the jury must have access to a manslaughter instruction. Yet today's majority categorically eliminates such instruction. Tamalini gave evidence he was too intoxicated to form the intent to assault. If such is true he may still have been reckless or negligent and thereby might be guilty of manslaughter alone.[8] The majority responds that even if Tamalini demonstrated sufficient diminished capacity to negate the specific intent to commit second degree assault he would still commit negligent assault in the third degree under RCW 9A.36.031 which is a felony and thus Tamalini would still commit second degree felony murder, not manslaughter. Majority at 454-455. I doubt this result.
First, this court has never explored the contours of what constitutes "negligent assault." This court has repeatedly held assault to be a specific intent crime requiring the specific intent to cause the assault. See State v. Hopper, 118 Wash.2d 151, 158, 822 P.2d 775 (1992) ("[T]he term `assault' contains within it the concept of knowing conduct. The definition of `assault' is a willful act. .... `The word `assault' is not commonly understood as referring to an unknowing or accidental act.'" (citations omitted)); State v. Byrd, 125 Wash.2d 707, 713, 887 P.2d 396 (1995) ("We agree and hold specific intent either to create apprehension of bodily harm or to cause bodily harm is an essential element of assault in the second degree."). See also State v. Dukowitz, 62 Wash.App. 418, 424, 814 P.2d 234 (1991) (by definition assault is an intentional act), review denied, 118 Wash.2d 1031, 828 P.2d 563 (1992); State v. Allen, 67 Wash.App. 824, 826, 840 P.2d 905 (1992) ("An allegation of assault contemplates knowing, purposeful conduct."); State v. Tunney, 77 Wash.App. 929, 934, 895 P.2d 13 (1995) ("[I]t is implicit that assault is a knowing, *460 intentional act."), aff'd, 129 Wash.2d 336, 917 P.2d 95 (1996). Thus, this precedent suggests a negligent assault may be logically impossible.
Further, even if assault may now be committed without any specific intent but with negligence alone, I assert that such negligent assault would be insufficient to support a second degree felony murder conviction in any event. Common law murder necessarily requires the element of "malice aforethought"[9] and in a felony murder prosecution the malice aforethought is supplied by the malicious intent to commit the felony. See, e.g., Commonwealth v. Matchett, 386 Mass. 492, 436 N.E.2d 400, 409-10 (1982) ("[T]he felony-murder rule is based on the theory that the intent to commit the felony is equivalent to the malice aforethought required for murder."); Commonwealth v. Watkins, 375 Mass. 472, 379 N.E.2d 1040, 1049 (1978) ("Under the theory of felony-murder the Commonwealth is still charged with proving the element of malice aforethought essential to the felony associated with the homicide."); Commonwealth v. Rawls, 328 Pa.Super. 469, 477 A.2d 540, 543 (1984) ("[T]he felony-murder doctrine merely imputes the malice incident to the intentional felony over, to the lolling....").
In upholding the felony-murder rule this court noted the same. See State v. Wanrow, 91 Wash.2d 301, 306, 588 P.2d 1320 (1978) ("The theoretical basis of felony-murder ... may be inferred from the malicious felonious intent which must he present to prove the underlying felony."); How then can the majority justify a felony murder conviction based on negligent assault which necessarily lacks malice? The majority simply goes too far when it suggests negligent assault, a class C felony with no specific intent and a standard range sentence of one to three months,[10] is sufficient to supply the constructive malice aforethought requirement to support second degree murder.
Washington has by far the broadest felony murder practice of any state in the union. Indeed, Washington stands virtually alone in allowing assault to serve as the predicate felony in a felony murder prosecution.[11]Compare People v. Ireland, 70 Cal.2d 522, 539, 75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323 (1969) with State v. Thompson, 88 Wash.2d 13, 558 P.2d 202 (1977).[12] While nearly every state restricts the underlying felonies to either inherently dangerous felonies[13] or to a short list of enumerated felonies,[14] Washington allows any felony to suffice.
As every sister jurisdiction either eliminates felony murder altogether[15] or restricts its scope considerably[16] our court today so *461 expands the crime to swallow every version of homicide. Under the majority's analysis the prosecution may prevail on a second degree murder prosecution by showing that the defendant negligently, but unintentionally, assaulted, which means nothing more than harmed, the victim and the victim died. At best a negligent death is second degree manslaughter. See RCW 9A.32.070 (negligent killing is second degree manslaughter). But now a negligent death constitutes second degree murder. The ominous predictions of two commentators are thus realized as "manslaughter has ceased to exist as a separate crime; all manslaughters automatically ride up an escalator to become felony-murders." Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law § 7.5 "Felony Murder" 637 (2d ed.1986). But such cannot be.[17] As several courts have noted,
A felony-murder rule that punishes all homicides committed in the perpetration of a felony whether the death is intentional, unintentional or accidental, without the necessity of proving the relation of the perpetrator's state of mind to the homicide, violates the most fundamental principle of the criminal law"criminal liability for causing a particular result is not justified in the absence of some culpable mental state in respect to that result."
Commonwealth v. Matchett, 386 Mass. 492, 436 N.E.2d 400, 409 (1982) (quoting People v. Aaron, 409 Mich. 672, 708, 299 N.W.2d 304, 328, 13 A.L.R.4th 1180 (1980)). Negligent third degree assault cannot serve as the predicate felony for second degree felony murder, even in Washington. Accordingly, Tamalini may have committed manslaughter alone.
Yet we will never know because the majority will not let the jury decide which level of moral culpability attaches. The majority forces the jury to the all or nothing Hobson's choice between total acquittal and conviction of the highest crime even though the evidence may demonstrate an intermediate offense is actually the crime which fits. As one commentator has queried, "If the proof in a felony murder case shows a reasonable possibility that the defendant may be innocent of that crime, but guilty of manslaughter, and the defendant wishes to have the jury consider the lesser alternative, what public interest justifies confining the jury to an all-or-nothing choice?" Bernard E. Gegan, Lesser Included Crimes Under Felony Murder Indictments in New York: The Past Speaks to the Present, 66 St. John's L. Rev 329, 369 (1992).
Lesser offense instructions play a critical role in our criminal justice system. First and foremost, lesser crime instructions allow the jury to more closely correlate the verdict to the act committed and thus arrive at the "true verdict."[18] This is particularly true in murder cases where there is often a dead body and the only question is the moral culpability of the defendant In such case the jury should have access to all the varying lesser degrees of murder.[19] In this respect *462 lesser offense instructions allow the defendant to present his theory of the case,[20] at least to the extent his theory is compatible with commission of a lesser crime. As the Supreme Court has noted, failure to give lesser crime instructions where the evidence supports such instruction puts the jury to an impermissible choice.[21] This fear of a Hobson's choice is substantial enough that erroneous failure to give a lesser crime instruction is reversible error. State v. Warden, 133 Wash.2d 559, 562 947 P.2d 708 (1997). Yet the majority now opens the door for erroneous verdicts in every future felony murder case.
Because the majority holds manslaughter instructions cannot be given in this or any, felony murder case, I dissent.
MADSEN and JOHNSON, JJ., concur.
NOTES
[1] To some extent, our decision in Davis relied on State v. Curran, 116 Wash.2d 174, 804 P.2d 558 (1991). In Curran, we held that a lesser included offense instruction is not available whenever alternative means exist for committing the crime charged. Indeed, we noted in Davis that Curran was dispositive because there are numerous ways of committing second degree felony murder apart from assault. Davis, 121 Wash.2d at 6, 846 P.2d 527.

Our decisions in Davis and Curran were followed by Lucky, 128 Wash.2d 727, 912 P.2d 483, in which we stated "if, when viewed from a perspective where only the statutory elements are considered, it is possible to commit the `greater offense' without necessarily committing the purported lesser offense, an instruction on the lesser offense is not warranted. The logical consequence of this rule is that whenever there are alternative means of committing a `greater' crime, there can be no lesser included offense unless the alternative means each overlap to the extent that they are not mutually exclusive." Lucky, 128 Wash.2d at 735, 912 P.2d 483. This court recently overruled that portion of the Lucky decision, indicating that we "retreat to reaffirming the lesser included rule as laid forth in Workman, prior to our discussions in Curran, Davis, and Lucky." Berlin, 133 Wash.2d at 548, 947 P.2d 700.
[2] Tamalini's proposed instruction was modeled after WPIC 4.11. The comments to that pattern instruction may have contributed to the perception that there is no distinction between a lesser included offense and an inferior degree of offense, the comment indicating "there is no logical distinction between a lesser degree of a crime and a lesser included crime." 11 Washington Pattern Jury Instructions: Criminal § 4.11 cmt. (2d ed. 1994)
[3] See also RCW 10.61.010, which states:

"Upon the trial of an indictment or information, the defendant may be convicted of the crime charged therein, or of a lesser degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a lesser degree of the same crime. Whenever the jury shall find a verdict against a person so charged, they shall in their verdict specify the degree or attempt of which the accused is guilty."
[4] RCW 9A.08.010 provides, in part:

"(d) ... A person is criminally negligent or acts with criminal negligence when he fails to be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable man would exercise in the same situation.
"(2) ... When a statute provides that criminal negligence suffices to establish an element of an offense, such element also is established if a person acts intentionally, knowingly or recklessly."
[5] The dissent claims that prior case law indicates that manslaughter is an inferior degree of felony "murder." Dissenting op. at 456-458. For that proposition, the dissent primarily relies on State v. Greer, 11 Wash. 244, 39 P. 874 (1895), State v. Rader, 118 Wash. 198, 203 P. 68 (1922), and State v. Berry, 52 Wash.2d 748, 328 P.2d 891 (1958). We first observe that reliance on cases predating the adoption of the current manslaughter statute is' not particularly helpful. Furthermore, the aforementioned cases do not support the proposition that manslaughter is an inferior degree of felony murder. The language in Greer upon which the dissent relies is clearly dicta, this court stating "the determination of this question is not necessary to the decision of this case" because the defendant had not preserved the issue for appeal. Greer, 11 Wash. at 247, 39 P. 874 (emphasis added). Rader is also of no assistance, the defendant there being charged with first degree premeditated murder, where as Tamalini, as we have noted, was charged with felony murder. Our holding is only that manslaughter is neither a lesser included offense or inferior degree of felony murder.

Finally, Berry is not helpful. Although Berry, like Tamalini, was charged with felony murder, we analyzed that case under RCW 10.61.010, the "conviction of lesser crime" statute which provides that a defendant may be convicted of either an inferior degree of the crime charged or of a lesser included offense of the crime charged. In Berry, our review was limited to the question of whether manslaughter was a lesser included offense of felony murder. We concluded that "there was sufficient evidence to warrant the trial court's giving instruction No. 6, which submitted to the jury the issue of whether or not he was guilty of the lesser included offense of manslaughter." Berry, 52 Wash.2d at 755, 328 P.2d 891 (emphasis added). Furthermore, we made no reference to RCW 10.61.003 which expressly relates to offenses that are inferior in degree. In light of our recent holdings that there are no lesser included offenses of felony murder, Berry has been overruled sub silentio. See State v. Davis, 121 Wash.2d 1, 846 P.2d 527 (1993); State v. Dennison, 115 Wash.2d 609, 801 P.2d 193 (1990); State v. Frazier, 99 Wash.2d 180, 661 P.2d 126 (1983).
[6] Instruction 26 states, "Homicide is the killing of a human being by the voluntary act of another if death occurs within three years and a day and is either murder, manslaughter, excusable homicide, or justifiable homicide." Clerk's Papers at 60.
[1] 10.61.003. Degree offensesInferior degree Attempt

Upon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto, or of an attempt to. commit the offense.
[2] See, e.g., State v. Daniels, 12 Kan.App.2d 479, 753 P.2d 300, 302 (1987) ("[T]he common law is the guide for determining whether one crime is a lesser degree of another.").
[3] The same rule is reflected in the very murder statute under which Tamalini was charged. RCW 9A.32, entitled "Homicide," declares

Homicide is the killing of a human being ... and is either (1) murder, (2) homicide by abuse, (3) manslaughter, (4) excusable homicide, or (5) justifiable homicide.
RCW 9A.32.010. The majority, however, finds irrelevant the fact that intentional murder, felony murder, and manslaughter are all contained in the same statute. Majority at 455. But, in State v. Berlin, 133 Wash.2d 541, 552-53, 947 P.2d 700 (1997), this court relied on the fact that felony murder and intentional murder are contained in the same statute to conclude the two constitute the same crime, murder.
[4] Yet without citing any authority and without any discussion, the majority asserts the opposite. Majority at 455 n. 5.
[5] However, if the felony is one of the most serious violent felonies listed in RCW 9A.32.030(1)(c), then the crime is first degree murder.
[6] A law review article on lesser offenses in Washington also acknowledges the rule. Kyron Huigens, The Doctrine of Lesser Included Offenses, 16 U. Puget Sound L.Rev. 185, 227 n. 168 (1992) ("[S]econd degree murder and first and second degree manslaughter are lesser degree offenses to first degree felony murder.").
[7] See State v. Berlin, 133 Wash.2d 541, 947 P.2d 700 (1997) (manslaughter instruction proper where intentional and felony murder charged).
[8] See, e.g., State v. Berlin, 133 Wash.2d 541, 552, 947 P.2d 700 (1997) (intoxication provides factual basis for giving manslaughter instruction in murder case). See also People v. Conrad, 31 Cal.App.3d 308, 107 Cal.Rptr. 421, 435 (1973) ("[W]here the felony-murder rule is invoked and diminished capacity is raised as a defense, manslaughter instructions must be given if there is a factual dispute as to whether the homicide was committed during perpetration of the underlying felony or where diminished capacity or intoxication are urged as a defense to the underlying felony charge."); Burch v. State, 346 Md. 253, 696 A.2d 443, 457 n. 4 (In a felony murder case "when a defense is generated to the underlying felony, including, for example, evidence of intoxication sufficient to negate a requisite intent, ... instructions on lesser degrees of murder, or even manslaughter, may be appropriate." (citations omitted)), cert. denied, ___ U.S. ___, 118 S.Ct. 571, 139 L.Ed.2d 410 (1997); State v. Selby, 183 N.J.Super. 273, 443 A.2d 1076, 1080 (1981) (In felony murder case, "the trial judge committed reversible error in refusing a jury charge on manslaughter, to which defendant was entitled" because such is a lesser degree offense and the evidence supported such verdict.).
[9] See 4 William Blackstone, Commentaries *198 ("[Malice aforethought] is the grand criterion which now distinguishes murder from other killing....").
[10] This is the standard range for first time offenders. RCW9.94A.310.
[11] It appears Maine is the only other jurisdiction allowing assault to serve as the predicate felony.
[12] See also Richard Bonnifield, Criminal Law, Felony-Murder Rule: An Assault Resulting in Homicide May be Used to Invoke the Felony-Murder Rule, 13 Gonz. L.Rev. 268 (1977); and Jeffrey A. James, Comment, Washington's Second Degree Felony-Murder Rule and the Merger Doctrine: Time for Reconsideration, 11; U. Puget Sound L.Rev. 311 (1988).
[13] Commonwealth v. Matchett, 386 Mass. 492, 436 N.E.2d 400, 409 (1982).
[14] For example, Vermont limits the reach of felony-murder to five enumerated felonies. State v. Doucette, 143 Vt. 573, 470 A.2d 676 (1983) (citing 13 Vt. Stat. Ann. § 2301).
[15] England eliminated felony murder in 1957 (2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 7.5, at 233 n. 135 (1984)). In America several states have followed suit. See Hawaii Rev. Stat. § 707.701 (1976); Ky.Rev.Stat. § 507.020 (Supp.1982); Ohio Rev. Code Ann. §§ 2903.01, 2903:04 (1996). Michigan abolished felony murder by court decision. See People v. Aaron, 409 Mich. 672, 299 N.W.2d 304, 328, 13 A.L.R.4th 1180 (1980) (ahplishing felony murder altogether because "it violates the basic premise of individual moral culpability upon which our criminal law is based.").
[16] For example, New Mexico requires the prosecution to prove intent to kill in felony murder prosecutions. State v. Ortega, 112 N.M. 554, 817 P.2d 1196 (1991). See also James J. Tomkovicz, The Endurance of the Felony-Murder Rule: A Study of the Forces that Shape Our Criminal Law, 51 Wash. & Lee L.Rev. 1429, 1467 (1994); W.E. Shipley, Annotation, Judicial Abrogation of Felony-Murder Doctrine, 13 A.L.R.4th 1226 (1982).
[17] Further, if negligent assault can serve as the predicate for second degree felony murder then the same facts, a negligently inflicted injury resulting in death, would constitute both second degree felony murder and second degree manslaughter and such a scheme would violate equal protection. See Olsen v. Delmore, 48 Wash.2d 545, 295 P.2d 324 (1956) (statutes proscribing different degrees of punishment for the same activity violate equal protection). Further, in any future second degree murder case the prosecutor could elect to prove all the requisites for intentional murder or could simply prove negligence and death for the same second degree murder conviction. See State v. Collins, 55 Wash.2d 469, 470, 348 P.2d 214 (1960) ("The principle of equality before the law is inconsistent with the existence of a power in a prosecuting attorney to elect, from person to person committing this offense, which degree of proof shall apply to his particular case.").
[18] Christen R. Blair, Constitutional Limitations on the Lesser Included Offense Doctrine, 21 Am. Crim. L.Rev. 445, 449 (1984) (Lesser crime instructions "`[e]nable the jury to correlate more closely the criminal conviction with the act committed.'" (quoting Note, Criminal Procedure Recognizing the Jury's Province to Consider Lesser Included Offense: State v. Ogden, 58 Or. L.Rev. 572 577 (1980))); State v. Wimberly, 498 So.2d 929, 933 (Fla.1986) (prime purpose of lesser crime instruction is "to prevent a miscarriage of justice by enabling the jury to choose the true verdict....") (Shaw, J., dissenting).
[19] See, e.g., People v. Schleiman, 197 N.Y. 383, 385, 90 N.E. 950, 951 (1910) ("upon the trial of indictments for murder in the first degree it has been the usual practice for the trial judge, even without any request, and certainly when requested, to charge the jury that they might find the defendant guilty of murder in the second degree, or of manslaughter in any of its several degrees....").
[20] State v. Theroff, 95 Wash.2d 385, 389, 622 P.2d 1240 (1980) ("Each side is entitled to have the trial court instruct upon its theory of the case if there is evidence to support that theory.").
[21] Keeble v. United States, 412 U.S. 205, 212-13, 93 S.Ct. 1993, 1998, 36 L.Ed.2d 844 (1973) ("Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.").