[No. 13643-1-II.   Division Two.   December 9, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. GARY LEE MINNIX, *Appellant*.

*Charles O. Bonet,* for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *Barbara L. Corey-Boulet, Deputy,* for respondent.

PETRICH, A.C.J. — Gary Lee Minnix appeals his convictions for rape in the first degree and burglary in the first degree. He challenges the trial court's finding that he was competent to stand trial, claiming that collateral estoppel precludes such a finding because of an earlier finding of incompetency by the King County Superior Court. He also contends that the evidence does not support a competency determination; that the trial court's refusal to determine Minnix's ability to enter a guilty plea undermines the determination of competency to stand trial; that the trial court's reasons for imposing an exceptional sentence were inadequate; and that his sentence was excessive. We affirm.

On December 26, 1988, sometime after 10 p.m., Jane[1] returned home from work. She noted that the front porch light did not work and that the door was unlocked. She entered her apartment, set her purse in the living room, put some chili on the stove, and then went into her bedroom where she noticed that a second light did not work. As she turned toward the light switch, Minnix grabbed her around

---

[1]Not the victim's real name.

the neck with his hand and sliced her hand with a knife, cutting through all her tendons and into her first finger. After a forceful struggle, Minnix pushed Jane to the floor, threatening her by putting a knife to her throat and by asking her if she wanted to die.

He then picked her up by one arm and tossed her onto the bed. She asked Minnix to put something on her hand because it was bleeding badly. Minnix wrapped a towel around her hand. Then he tied her leg to a bedpost, ripped off her shirt, cut off her bra with the knife, and cut off her skirt. He then removed her underwear and nylons.

Concerned that the chili on the stove might start a fire, Jane asked Minnix to shut off the stove. He returned drinking a bottle of beer. He shook up the beer and shoved it into Jane's vagina, douching her with the beer. He then pulled out the bottle and drank from it.

Minnix removed his clothing and inserted his penis into Jane. After having sexual intercourse, he performed cunnilingus on her. Then he inserted his penis into Jane again, after which he placed his penis in her mouth. During these episodes, he called Jane a "bitch" and threatened to kill her. Minnix then took money from Jane's purse and left the apartment.

Minnix was a resident at Western State Hospital and had been allowed to leave to visit his family. When he returned the evening of the rape, he was breathing hard and wearing bloodstained clothes. He gave various explanations for his condition. He said that he had been dropped off late and was hurt running across the hospital grounds; that he got cut playing basketball; and that someone abducted him at knife- and gunpoint and, after forcing him to remove his clothes, tied him to a tree.

The police found that someone had unscrewed the bedroom light in Jane's apartment. Minnix's fingerprint was observed impressed on a light fixture, and a pubic hair taken from the victim was indistinguishable from Minnix's. A neighbor testified that she had seen Minnix loitering outside the apartment on several occasions.

The trial judge held a competency hearing in which six witnesses testified. Despite the consensus among these witnesses that Minnix was mildly retarded, having an IQ between 49 and 67, the court found Minnix competent to stand trial. The court considered a previous finding of incompetency of a King County court in 1986, which dismissed, without prejudice, seven counts against Minnix because of lack of competency to stand trial. A jury, in the case under review, found Minnix guilty of rape and burglary in the first degree, and the court, following the recommendation of the presentence investigative report and the prosecutor, sentenced Minnix to 600 months in prison.

## I
### COMPETENCY TO STAND TRIAL

It is fundamental that no incompetent person may be tried, convicted, or sentenced for the commission of an offense so long as the incapacity continues. RCW 10.77.050. Indeed, the conviction of an accused while he is legally incompetent violates his constitutional right to a fair trial under the Fourteenth Amendment's due process clause. The test for competency to stand trial is whether the accused is capable of properly understanding the nature of the proceedings against him and whether he is capable of rationally assisting his legal counsel in the defense of his cause. RCW 10.77.010(6).

(Citations omitted.) *State v. Wicklund*, 96 Wn.2d 798, 800, 638 P.2d 1241 (1982).

A. Collateral Estoppel (Issue Preclusion).

Minnix contends that because he was previously adjudged incompetent to stand trial in King County for crimes he allegedly committed there, and because the basis for his incompetency was an incurable developmental disability, the State is collaterally estopped from relitigating the issue of his competency. We disagree.

█ The doctrine of collateral estoppel applies in criminal cases under the Fifth and Fourteenth Amendments to the United States Constitution. *Ashe v. Swenson*, 397 U.S. 436, 443, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970) (federal jurisdiction); *Simpson v. Florida*, 403 U.S. 384, 29 L. Ed. 2d 549, 91 S. Ct. 1801 (1971) (applies to states); *State v. Peele*, 75

Wn.2d 28, 30, 448 P.2d 923 (1968); *State v. Dupard*, 93 Wn.2d 268, 609 P.2d 961 (1980). The doctrine prohibits the government from relitigating any ultimate facts resolved in the defendant's favor by the prior acquittal. *Ashe*, at 447. The doctrine applies when there has been a prior determination of a factual event which is the essential ingredient of the current charged offense, thereby implicating double jeopardy considerations. *Simpson v. Florida*, 403 U.S. at 387-88.

■ Here, double jeopardy is not implicated because there is no relationship between the factual underpinnings of the two judicial proceedings and there has been no prior acquittal of an offense based on the facts of this case. Rather, we are dealing with a procedural aspect of the two proceedings: the competency of the accused to stand trial for the charges against him. The finding of incompetency by the King County Superior Court determined competency at that time for those charges. The trial court here did not determine an identical issue; it determined competency at a different time at a different trial, and on different charges.

B. Evidence Supporting Finding of Competency.

■ Minnix also contends that the record does not support the trial court's finding of competency. We review a trial court's determination of competency for an abuse of discretion. *State v. Ortiz*, 104 Wn.2d 479, 482, 706 P.2d 1069 (1985), *cert. denied*, 476 U.S. 1144 (1986). In *Ortiz*, the trial

> court found that petitioner understands that there is a judge in the courtroom, that a prosecutor will try to convict him of a criminal charge, and that he has a lawyer who will try to help him. In addition, the trial court found that petitioner has the ability to recall past facts and can relate these facts to his attorney.

*Ortiz*, at 482-83. The *Ortiz* court specifically rejected a requirement that the petitioner be able to suggest a particular trial strategy. *Ortiz* did not involve mental illness; rather, like the case before us, it involved a developmental disability. The court described Ortiz's capacity:

> Petitioner has an IQ that ranges from 49 to 59, which places him in the category of mildly retarded. He knows that the flag

is red, white and blue, that there are 12 months in a year, and that a thermometer shows how hot it is. He does not know, however, what the shape of a ball is or where rubber comes from. He cannot name four presidents, he thinks Longfellow was Jesus, and thinks that there is 1 day in a week.

*Ortiz*, at 482.

■ Here, there is evidence from the expert witnesses that Minnix understood what a judge did, that the prosecutor was trying to charge him with a crime, that he had an attorney to assist him, and that he could recall past facts. In addition, there is evidence that Minnix could develop his own defenses and understand guilt (*i.e.*, explanations for the bloodstains and dirt when he returned to the hospital). He also understood that he had committed a violent sexual offense and that he was charged with forcible rape. Finally, there is evidence that Minnix understood that if he acted "stupid" he might not go to trial. He understood that the charges in King County were dismissed because he was developmentally disabled. The trial court did not abuse its discretion in finding Minnix competent to stand trial.

## II
### ABILITY TO ENTER GUILTY PLEA

Minnix contends that the trial court refused to allow him to plead guilty, thereby violating his right to plead guilty. *State v. Martin*, 94 Wn.2d 1, 4-5, 614 P.2d 164 (1980). We have reviewed the record and find that the issue of Minnix's right to plead guilty arose only in the context of his competency to stand trial. Minnix argued that if he was incompetent to plead guilty, he was certainly incompetent to stand trial.

■ When asked to enter a finding that Minnix was incapable of entering a plea, the trial court said:

THE COURT: I will decline to make such a finding. I am not willing to determine for all time that if proper plea papers, if proper statements were made, that a judge could not enter a plea.

Part of my thinking on that, I am one of 15 judges here, even though I have grave doubt about whether I could accept a plea in this case, I am unwilling to so find until the issue arises and I have the plea papers before me. And I

have observed the defendant who was unable or unwilling to answer my questions today. I am not willing to conclude if he had a desire to enter a plea that he would still be unwilling or unable to answer my questions. I don't know. I am unwilling to make that finding.

Nothing in the record shows that Minnix attempted to properly enter a guilty plea. Minnix presented no defendant's statement on plea of guilty, nor did he offer such a plea. The court was not required to determine the validity of a potential but unsubmitted guilty plea.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

ALEXANDER and MORGAN, JJ., concur.