[No. 29564-8-III.    Division Three.    May 1, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. WAYMOND SUVELL TURNER, *Appellant*.

*Janet G. Gemberling* (of *Janet Gemberling PS*), for appellant.

*D. Angus Lee, Prosecuting Attorney,* and *Edward A. Owens, Deputy,* for respondent.

¶1  KORSMO, C.J. — Waymond Turner appeals his convictions for second degree malicious mischief and third degree assault, challenging the sufficiency of the evidence and the performance of his counsel. We conclude that the evidence was sufficient and that he has not established prejudicial error by his counsel. The convictions are affirmed.

## FACTS

¶2  Mr. Turner got into a violent argument and confrontation at his parents' home with his father. Mr. Turner's mother called the police. Corporal Beau Lamens and Deputy Keven Dobson from the Grant County Sheriff's Department responded. Corporal Lamens ordered Mr. Turner to get on his knees. Mr. Turner got on his knees. Corporal Lamens went behind Mr. Turner to handcuff him. Mr. Turner "started resisting." Report of Proceedings (RP) (Oct. 7, 2010) at 137. He "pulled his hands apart and turned around and lunged forward and grabbed [Corporal Lamens] across the waist." RP (Oct. 6, 2010) at 63. Corporal Lamens broke Mr. Turner away from his waist and the two wrestled.

¶3  The two deputies eventually handcuffed Mr. Turner, stood him up, and walked him to the patrol car. Mr. Turner

refused to get in the car and his "torso was rigid." *Id.* at 70. Corporal Lamens used a "light knee strike" to "disrupt" Mr. Turner's balance. *Id.* The technique worked but afterwards Mr. Turner straightened up. He lunged and "head butted" Corporal Lamens in the lip.

¶4 The deputies eventually got Mr. Turner into the car. They left Mr. Turner in the car and returned to speak with his parents. Mr. Turner kicked a passenger side window out of the patrol car. The patrol car was out of commission for a day while the window was repaired.

¶5 The State charged Mr. Turner with second degree assault of his father, third degree assault of Corporal Lamens, and second degree malicious mischief.

¶6 The State's closing argument characterized Mr. Turner's "waist-grab" as the third degree assault. Mr. Turner objected:

> Your Honor, the Assault 3 has been and always has been about whether or not my client headbutted [sic] this Corporal Lamens. Now there's something else about some reaction to—it's now being detained and being thrown down in the dirt like a dog, it is now being characterized as Assault 3. When, in fact, the only thing that was ever represented in all of our discussions throughout the entire case was whether or not my client headbutted [sic] him at the car.

RP (Oct. 8, 2010) at 27. The court overruled the objection. The prosecutor then continued and referred to the assault as an "attack." *Id.* at 28. Mr. Turner objected that "attack" mischaracterized the evidence and the court overruled the objection. The prosecutor continued, "He attacks the officer, Ladies and Gentlemen. He doesn't sit down there and try to push him away. He attacks—the officer standing there. He turns around and comes at the officer and attacks him." *Id.* at 28-29.

¶7 The prosecutor told the jury that Mr. Turner said, " 'You want to die, Old Man,' " to his father. *Id.* at 34. This was incorrect. But there was no objection. The prosecutor also argued:

> Now, you may hear argument that "Oh, come on. It's just a family fight. He really didn't mean to do it." Again, the State would argue that, you know, it doesn't matter if he meant to do the harm there. . . .
>
> Ladies and Gentlemen, domestic violence is one of the worst things in our country right now. People get harmed. People get killed by that all the time.

*Id.* at 36. The court sustained defense counsel's objection to the argument and told the jury to "disregard the last argument." *Id.* at 36-37.

¶8 The jury found Mr. Turner guilty of second degree malicious mischief and third degree assault. The jury found him not guilty of second degree assault but guilty of the lesser included crime of unlawful display of a weapon.

## ANALYSIS

### Second Degree Malicious Mischief—Conduct Interrupting Public Service

¶9 Mr. Turner argues that the evidence was insufficient to prove the malicious mischief count. His essential argument is that kicking out the police car window and putting the car out of service for a day is insufficient to satisfy the statutory requirement of "substantial risk of interruption or impairment of service rendered to the public" required by RCW 9A.48.080(1)(b). The question is one of statutory interpretation and therefore a question of law that we will review de novo. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005).

¶10 A person commits second degree malicious mischief if he or she knowingly and maliciously

> [c]reates a substantial risk of interruption or impairment of service rendered to the public, by physically damaging or tampering with an emergency vehicle or property of the state, a political subdivision thereof, or a public utility or mode of public transportation, power, or communication.

RCW 9A.48.080(1)(b). Mr. Turner argues that the statute requires that service be interrupted. However, the statute requires only that the defendant "[c]*reates a substantial risk* of interruption or impairment," not that the defendant actually did interrupt or impair law enforcement. RCW 9A.48.080(1)(b) (emphasis added).

¶11 Mr. Turner also argues that the State failed to prove this element because it did not show that Deputy Dobson was unable to perform his duties without this particular patrol car or that police service in general was impaired or interrupted. *State v. Gardner*, 104 Wn. App. 541, 16 P.3d 699 (2001). He relies on *State v. Hernandez*, 120 Wn. App. 389, 85 P.3d 398 (2004), for the proposition that loss of this particular car for a day does not create a substantial risk of interruption or impairment of services. Mr. Hernandez spit at least four times in the back of a police car. *Id.* at 391. An officer spent about 15 minutes cleaning up the mess. *Id.* We concluded that this did not satisfy the statutory requirement of substantial risk or impairment: "His actions simply did not rise to the level of knowing and malicious creation of a substantial risk of interruption or impairment of service to the public [because] [u]nlike the defendant in *Gardner*, Mr. Hernandez did not disrupt emergency services by physically manipulating a device crucial to those services." *Id.* at 392. The police car was unavailable for only 15 minutes. Simply spitting creates little risk that services would be impaired or interrupted. Breaking a window, on the other hand, unlike spitting, does create the necessary substantial risk that services would be interrupted or impaired.

¶12 Police cannot use patrol cars with broken rear windows. Breaking a rear window in a patrol car necessarily causes the patrol car to be unavailable for some period of time. Here, the car was unavailable for a day. The jury here could then easily infer that not having the car available created a substantial risk of interrupting or impairing service to the public. The Grant County Sheriff's Depart

ment had one less patrol car available to use and the jury was free to conclude that having fewer patrol cars available may impair service to the public. There was substantial evidence that Mr. Turner's actions "[c]reate[d] a substantial risk of interruption or impairment of service rendered to the public." RCW 9A.48.080(1)(b).

INEFFECTIVE ASSISTANCE OF COUNSEL

██ ¶13 Whether counsel was ineffective is a question of law that is reviewed de novo. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001).

¶14 A defendant alleging ineffective assistance of counsel must make two showings:

> (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). Mr. Turner contends that his lawyer did not effectively represent him at trial. He complains specifically about a number of things.

*Conceding Second Degree Malicious Mischief*

██ ¶15 Mr. Turner argues that his lawyer should have argued that the State failed to prove the statutorily required "substantial risk of interrupting or impairing public service" element rather than conceding that the State proved second degree malicious mischief. We disagree with his position on this issue and have already explained why. Certainly there also is no prejudice because ultimately he would not have prevailed no matter what his lawyer did or did not do on this question. *State v. Silva*, 106 Wn. App. 586, 596, 24

P.3d 477 (2001). Moreover, the lawyer's concession on this point may well have bolstered the lawyer's credibility with the jury. *Id.* (quoting *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991)). That is a good tactic. *Id.*

*Failure To Request a Bill of Particulars*

¶16 Mr. Turner next argues that his lawyer failed to provide effective assistance because he did not file a request for a bill of particulars to require that the State specify exactly which acts it would rely on to support the third degree assault charge—the waist-grab of the officer or the head butt of the officer.

¶17 Mr. Turner had "a constitutional right to be informed of the nature and cause of the accusation against him" to enable him to prepare a defense. *State v. Bergeron*, 105 Wn.2d 1, 18, 711 P.2d 1000 (1985) (citing U.S. Const. amend. VI; Const. art. I, § 22 (amend. 10)). The purpose of a bill of particulars is to "amplify or clarify particular matters essential to the defense." *State v. Holt*, 104 Wn.2d 315, 321, 704 P.2d 1189 (1985).

¶18 The request for a bill of particulars should be granted if " 'it is necessary that [the] defendant have the particulars sought in order to prepare his defense and in order that prejudicial surprise will be avoided.' " *State v. Noltie*, 116 Wn.2d 831, 845, 809 P.2d 190 (1991) (quoting 1 Charles Alan Wright, Federal Practice and Procedure § 129, at 436-37 (2d ed. 1982)). No bill of particulars is required if the particulars are already in the charging document or " 'if the government has provided the information called for in some other satisfactory form.' " *Id.* (quoting Wright, *supra*, at 436-37). Whether or not to grant a request for a bill of particulars is a matter left to the discretion of the trial court. *Id.* at 844. Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

¶19 The information here charged:

On or about the 16th day of June, 2010, in the County of Grant, State of Washington, the above-named Defendant, did assault a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault; contrary to the Revised Code of Washington 9A.36.031(1)(g).

Clerk's Papers (CP) at 2.

¶20 Defense counsel told jurors that he had not anticipated that the prosecutor would rely upon the waist-grab evidence to prove the third degree assault. RP (Oct. 8, 2010) at 56. He then went on to tell jurors that it could not have been an intentional act because it was an awkward and ineffective way to assault someone. *Id.* at 57.

¶21 From these admissions, Mr. Turner argues on appeal that counsel's error was in failing to obtain a bill of particulars. This claim fails on several grounds. First, there is no guarantee that the trial court would have granted the request. It is a discretionary decision to grant a bill of particulars, and it is unnecessary to do so when the necessary information has already been disclosed. *Noltie*, 116 Wn.2d at 844-45. It is clear that the information about the waist-grab was known to defense counsel from discovery; it was the legal significance of the information that appears to have eluded counsel. The record does not reflect any reason why the trial court would have had to grant the request if it had been made.

¶22 Second, Mr. Turner's argument rests on the express assumption that a bill of particulars would have limited the prosecutor to one factual theory of assault. He cites no authority for that proposition, and we can find none. There was a continuing course of assaultive behavior once the corporal attempted to take Mr. Turner into custody. The prosecutor was not required to choose a specific act as "the assault" and there certainly is no indication that the prosecutor would have relied upon only one specific strike against the deputy to prove the count.

¶23 Mr. Turner's argument ultimately boils down to this: *if* counsel had requested a bill of particulars, the trial court *might* have exercised its discretion to direct that one be filed, and the bill of particulars *might* have been voluntarily limited to only one contested aspect of the evidence showing that an assault took place. This string of conjecture does not establish error by counsel.

¶24 An actual basis supported by the record for arguing ineffective assistance is one that the defense does not assert on appeal—that defense counsel did not understand the significance of the evidence. Defense counsel's admission in closing argument that he had not foreseen the prosecutor's use of the evidence would establish deficient representation by counsel. The question then would have become whether Mr. Turner had established that he was actually prejudiced by counsel's error. *McFarland*, 127 Wn.2d at 335. In this context, that would require him to show that he had evidence that would have provided a defense to that theory of assault, but counsel's failure prevented him from developing the evidence. Typically, where the record does not support an argument or there is evidence outside the record, the remedy is to bring a personal restraint petition with evidence in support of the claim. *Id.* at 338. The absence of evidence in the record to support the claim is presumably the reason that the defense has not argued this theory on appeal.[1]

¶25 There are many ways to defend a third degree assault charge involving a person known to be an officer performing his duties. RCW 9A.36.031(1)(g). One can deny that any assault took place; he can deny that he acted intentionally; he can also claim justification (i.e., self-defense). It is not a defense, however, to focus a wrestling match on a single contested striking, ignore the balance of the assaultive behavior, and claim error because the one

---

[1] Similarly, if the prosecutor somehow misled defense counsel concerning the evidence, that could be explained by an affidavit from defendant's trial counsel. We will not presume egregious misbehavior without supporting evidence.

particular blow was not perceived to be of legal significance. The totality of the behavior established a third degree assault. The evidence amply supported the jury's verdict, and a localized "defense" (or perceived error) to one aspect of the brawl did not affect the overall picture. For this reason, too, this argument does not establish prejudicial error.

¶26  Mr. Turner has not established that counsel erred in failing to request a bill of particulars. He also has not established that he was actually harmed by the failure. He also has not pursued an argument that counsel's error in recognizing the significance of the evidence actually harmed him at trial. For all of these reasons, his claim of ineffective assistance fails.

PROSECUTORIAL MISCONDUCT

¶27  A trial court's ruling on a claim of prosecutorial misconduct is reviewed for abuse of discretion. *State v. Cheatam*, 150 Wn.2d 626, 652, 81 P.3d 830 (2003).

¶28  The defendant must prove that there was misconduct and that the misconduct was prejudicial. *Id.* A new trial is required only if "there is a substantial likelihood that the improper argument affected the verdict." *Id.* (citing *State v. Finch*, 137 Wn.2d 792, 839, 975 P.2d 967 (1999)).

¶29  A prosecutor's closing argument is considered in the context of the total argument, the evidence addressed in the argument, the jury instructions, and the issues in the case. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). "The prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury." *State v. Stenson*, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997) (holding that it was proper to argue that a witness " 'was struck by the defendant's lack of grief' " when the witness testified he was surprised that the defendant was the shooting victim's husband). It is improper to argue facts not in evidence or to appeal to the jury's passions in a way that prejudices the

defendant. *State v. Belgarde*, 110 Wn.2d 504, 507-08, 755 P.2d 174 (1988) (holding it was improper to refer to the defendant as part of a group of " 'madmen' " and " 'butchers' " and to discuss Wounded Knee).

■■ ¶30 Appellate review is not as rigorous if counsel did not object in the trial court where something could have been done about it. *See State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994). Failure to object to improper argument waives any claim of error on appeal "unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *Id.* Mr. Turner contends that several of the prosecutor's comments during closing argument amounted to misconduct—the use of the word "attack," the misquote of Mr. Turner's comments to his father, and the reference to domestic violence in society generally.

■ ¶31 The evidence showed that Mr. Turner turned around from a kneeling position and grabbed Corporal Lemans' waistband "instantaneous[ly]." RP (Oct. 6, 2010) at 63. "Attack" is then a fair description of what happened and not misconduct. The court properly allowed the argument.

¶32 Misquoting Mr. Turner as saying, " 'You want to die, Old Man,' " does not reach the level of prejudice that requires a new trial. RP (Oct. 8, 2010) at 34. Significantly, Mr. Turner did not object. *Id.* Moreover, the remark was neither flagrant nor ill intentioned. The prosecutor went on to urge the jury to rely on their recollection. *Id.*

■ ¶33 The prosecutor described domestic violence as a national problem and commented that "people get killed." *Id.* at 36. The court, however, gave the jury the standard instructions on counsel's arguments:

> The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyer's statements are not evidence. . . . You must disregard any

remark, statement, or argument that is not supported by the evidence or the law in my instructions.

CP at 60. The jury was also instructed to "reach your decision based on the facts proved to you and on the law given to you, not on sympathy, prejudice, or personal preference." CP at 61. In response to defense counsel's objection, the court told the jury to "disregard the last argument." RP (Oct. 8, 2010) at 36-37. The comment, while not the best use of the State's argument time, was not prejudicial in light of the court's instructions, the State's overall argument, and the evidence and issues at trial. *See Dhaliwal*, 150 Wn.2d at 578. We also note that both of the final two challenged arguments addressed the second degree assault count. Since Mr. Turner was acquitted on that count, it is difficult to see how any error here was prejudicial.

¶34 The convictions are affirmed.

BROWN, J., concurs.

¶35 SWEENEY, J. (dissenting) — We rarely conclude that counsel ineffectively represented an indigent defendant in a criminal case. There are many different ways to try a case and counsel's decision to try the case one way rather than another does not render the decision wrong and the representation ineffective. But the circumstances here lead me to conclude that counsel's failure to move for a bill of particulars amounts to ineffective assistance. If granted, the order would have required the State to spell out which of Waymond Turner's two assaultive acts the State intended to rely on. I conclude the failure amounts to ineffective assistance of counsel based on the way counsel elected to try this case.

¶36 Here was his objection:

Your Honor, the Assault 3 has been and always has been about whether or not my client head butted [sic] this Corporal

> Lamens. . . . When, in fact, the only thing that was ever represented in all of our discussions throughout the entire case was whether or not my client head butted [sic] him at the car.

Report of Proceedings (Oct. 8, 2010) at 27.

¶37 Now, for me, it does not make any difference whether the lawyer just assumed that the State would rely on the "head-butt" to support the assault charge or whether the State affirmatively represented (misrepresented) that it would rely on the head-butt. It was apparently an important part of the defense to that charge and a request for a bill of particulars would have cleared up any confusion and permitted the lawyer to structure his defense accordingly. *State v. Peerson*, 62 Wn. App. 755, 768, 816 P.2d 43 (1991) ("[T]he purpose of the bill of particulars is to give the defendant sufficient notice of the charge so that he can competently defend against it."). The purpose of a bill of particulars is to "amplify or clarify [the] particular matters essential to the defense." *State v. Holt*, 104 Wn.2d 315, 321, 704 P.2d 1189 (1985). The right to a bill of particulars is grounded in our constitution. *State v. Duffey*, 97 Wn. App. 33, 43, 981 P.2d 1 (1999). The test is whether the State's information provides enough facts to defend against the charge and avoid surprise. *State v. Allen*, 116 Wn. App. 454, 460, 66 P.3d 653 (2003). The failure to move to require a bill of particulars also waives any right to complain about the inadequacy of the facts in the information later on. *State v. Hayes*, 81 Wn. App. 425, 440, 914 P.2d 788 (1996); *Holt*, 104 Wn.2d at 320.

¶38 The information here charged:

> On or about the 16th day of June, 2010, in the County of Grant, State of Washington, the above-named Defendant, did assault a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault; contrary to the Revised Code of Washington 9A.36.031(1)(g).

Clerk's Papers at 2. Again, counsel proceeded on the assumption that the State would rely on the head-butt to

show the assault. Whether or not the State would so rely is not spelled out in the information. A bill of particulars would have solved that problem and permitted counsel to adequately prepare a defense or encourage Mr. Turner to plead guilty to the charge.

¶39 I would reverse the conviction for third degree assault and remand for retrial on that charge.