# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | No. 72433-9-I |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DAVID WAYNE WILLIAMS, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 24, 2014 |
| | ) | |

DWYER, J. — David Williams appeals his conviction of malicious mischief in the second degree. On appeal, he maintains that (1) his right to a speedy trial was violated, (2) insufficient evidence was adduced at trial to support his conviction, and (3) the trial court erred by refusing to instruct the jury that malicious mischief in the third degree was a lesser-included offense of the crime charged. Finding no error, we affirm.

I

In July of 2012, Williams was incarcerated at the Clark County Jail. During the evening of July 14, Officer Duncan Paddy was instructed to inspect an area in which Williams was housed based on indications that the fire-suppression system had been activated in that area. When Paddy arrived at Williams' cell, he could see mist in the air and smell oil. Based on his prior experience, he understood these things to mean that the jail's fire-suppression system had been

No. 72433-9-I/2

activated.

Paddy removed Williams from his cell and placed him in a different cell. When he asked Williams what had happened, Williams told him, "I can't take it anymore." Williams indicated that he had not eaten in a week and that he was being "antagonized" by the custody staff. When asked why he had not eaten, Williams responded, "I can't eat that shit"—referring to his diet of "Nutraloaf."[1]

A maintenance worker, Toby Dobrava, was then called to inspect Williams' cell. Dobrava discovered that one of the sprinkler heads in Williams' cell had been damaged. It took Dobrava one hour to fix the damaged sprinkler head. Inmate workers, who were supervised by Paddy, spent between 30 and 40 minutes cleaning the oil from the floor and walls of Williams' cell.

Paddy later testified that Williams' actions caused the fire-suppression system throughout the entire jail facility to be "deactivated." Paddy testified that the system is not functional until a maintenance worker reactivates the system.

Dobrava testified that "the sprinkler system . . . would put a fire out still" before being reset; however, he stated that the system would be "in a 'trouble' state." When asked whether the system would need to be reset in order for the "alarms to be working correctly," Dobrava answered affirmatively.

Williams was initially charged with malicious mischief in the second degree pursuant to RCW 9A.48.080(1)(a).[2] The charge was later amended to

---

[1] Described as "a small bread" and "a nutritious drink."
[2] (1) A person is guilty of malicious mischief in the second degree if he or she knowingly and maliciously:

allege malicious mischief in the second degree pursuant to RCW 9A.48.080(1)(b).[3]

On July 27, 2012, Williams was arraigned. A trial date was set for August 27. During the arraignment, Williams' counsel stated to the trial court, "I mean there's an issue of competency going on, but we'll deal with that later." Williams' counsel was referring to the fact that his client had not eaten for "ten or eleven days" and while his counsel "went ahead with arraignment today because I thought [Williams] was probably in a competent enough situation to do that . . . if he continually cannot eat, he's going to deteriorate." His counsel went on to say that there was "a competency issue" and "I'm worried about competency issues."

On August 8, at a pretrial hearing, both Williams' counsel and the trial court expressed doubts about Williams' competency.

> MR. SOWDER: . . . I mean, he's not eating – not eating, not much eating. I think he said he nibbled a little bit of Nutraloaf. Sliding into incompetency, if not there already . . . .
> JUDGE WOOLARD: Yes, I understand.
>
> . . . .
>
> MR. SOWDER: And two, he might have starved himself to death by then, or whatever he would, due to incompetence. . . .
> JUDGE WOOLARD: If you're concerned about his competency, then that's where we are.
> MR. SOWDER: But I do that, we enter this quagmire. But my point is –
> JUDGE WOOLARD: And maybe he's not competent if he's that

---

(a) Causes physical damage to the property of another in an amount exceeding seven hundred fifty dollars.

[3] (1) A person is guilty of malicious mischief in the second degree if he or she knowingly and maliciously:

. . .

(b) Creates a substantial risk of interruption or impairment of service rendered to the public, by physically damaging or tampering with an emergency vehicle or property of the state, a political subdivision thereof, or a public utility or mode of public transportation, power, or communication.

self-destructive.

On August 23, at a readiness hearing, the trial court indicated that the custody staff had asked to have Williams confined to the jury box because of "spitting" concerns. Shortly thereafter, Williams interrupted his counsel to say, "I'm not coming to this chicken-shit, fucking place." The trial court immediately terminated the hearing.

Following the hearing, the trial court ordered a competency evaluation for Williams. The order required that the evaluation be performed at Western State Hospital.

On August 29, Williams' counsel filed a declaration in which he said, "I have known David Williams for a number of years and I see him decompensating and becoming irrational."

On October 23, the trial court entered an order of competency and set a trial date of November 5. Williams, through his counsel, moved to dismiss the charges against him, asserting that his right to a speedy trial had been violated. The basis for his assertion was that, because there had been no factual basis for ordering a competency hearing, the time that elapsed between the order for a competency hearing and the order finding him competent to stand trial should not have been excluded from the speedy trial calculation. Williams' counsel then moved to withdraw on the basis that he would be a critical witness at the hearing on the motion to dismiss. The trial court allowed Williams' counsel to withdraw and appointed a new attorney to represent Williams. Over the next few months, the trial court granted two further requests from Williams to replace his counsel.

- 4 -

With each replacement, the trial date was continued.

On April 8, 2013, a hearing was held on Williams' speedy trial motion. At the hearing, Williams' first attorney testified that the trial judge had, without being asked by either the State or by Williams, stated that she would entertain an order for a competency evaluation and had then left the courtroom without giving Williams an opportunity to address the issue. Following additional testimony and argument, the trial court denied Williams' motion to dismiss, finding that, in view of Williams' manner, appearance, speech, and behavior, Judge Woolard had not abused her discretion in ordering a competency evaluation and, therefore, the proceedings relating to the determination of competency had been properly excluded from Williams' speedy trial calculation pursuant to CrR 3.3(e)(1).[4]

On April 10, 2013, the case was tried to a jury. The State called three witnesses: Paddy, Dobrava, and a deputy prosecutor who had been in court at Williams' first appearance. Following the close of evidence, the trial court refused Williams' request to instruct the jury that malicious mischief in the third degree was a lesser included offense of malicious mischief in the second degree. The jury returned a guilty verdict, and Williams was sentenced within the standard range.

He now appeals.

---

[4]    **(e) Excluded Periods.** The following periods shall be excluded in computing the time for trial:
    (1) *Competency Proceedings.* All proceedings relating to the competency of a defendant to stand trial on the pending charge, beginning on the date when the competency examination is ordered and terminating when the court enters a written order finding the defendant to be competent.

- 5 -

II

Williams asserts that his right to receive a speedy trial was violated. This violation occurred, he avers, because the trial court abused its discretion in ordering an examination to determine whether he was competent to stand trial and, as a result of this error, the time that elapsed between the order to determine competency and the order finding him competent was improperly excluded from the speedy trial calculation. We disagree.

"It is fundamental that no incompetent person may be tried, convicted, or sentenced for the commission of an offense so long as the incapacity continues." State v. Wicklund, 96 Wn.2d 798, 800, 638 P.2d 1241 (1982) (citing RCW 10.77.050). "'Indeed, the conviction of an accused while he is legally incompetent violates his constitutional right to a fair trial under the Fourteenth Amendment's due process clause.'" State v. Minnix, 63 Wn. App. 494, 497, 820 P.2d 956 (1991) (quoting Wicklund, 96 Wn.2d at 800).

"The test for competency to stand trial is whether the accused is capable of properly understanding the nature of the proceedings against him and whether he is capable of rationally assisting his legal counsel in the defense of his cause." Wicklund, 96 Wn.2d at 800 (citing RCW 10.77.010(6)). Pursuant to RCW 10.77.060(1)(a),[5] whenever "there is a reason to doubt" the defendant's

---

[5] Whenever a defendant has pleaded not guilty by reason of insanity, or there is reason to doubt his or her competency, the court on its own motion or on the motion of any party shall either appoint or request the secretary to designate a qualified expert or professional person, who shall be approved by the prosecuting attorney, to evaluate and report upon the mental condition of the defendant. RCW 10.77.060(1)(a).

competency, the trial court is required to appoint experts and order a formal competency hearing. City of Seattle v. Gordon, 39 Wn. App. 437, 441, 693 P.2d 741 (1985) ("The procedures of the statute are mandatory and not merely directory."). "The factors a trial judge may consider in determining whether or not to order a formal inquiry into the competence of an accused include the 'defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel.'" In re Pers. Restraint of Fleming, 142 Wn.2d 853, 863, 16 P.3d 610 (2001) (quoting State v. Dodd, 70 Wn.2d 513, 514, 424 P.2d 302 (1967)). Any party to a criminal case or the trial court may move to have a defendant evaluated for competency. RCW 10.77.060(1)(a).

A trial court's decision on whether to order a competency examination is reviewed for an abuse of discretion. State v. Heddrick, 166 Wn.2d 898, 903, 215 P.3d 201 (2009). A trial court abuses its discretion when its decision is arbitrary or is based upon untenable grounds or made for untenable reasons. State v. McDonald, 138 Wn.2d 680, 696, 981 P.2d 443 (1999).

Our review of the trial court record reveals that the trial court acted well within its discretion when ordering an evaluation of Williams' competency to stand trial. Williams' counsel repeatedly represented to the court that his client was either approaching incompetence or was already incompetent. The trial court, in turn, expressed doubts about Williams' competence, which were not disputed by Williams or by his counsel. Furthermore, the trial court witnessed Williams' profane outbursts and was informed of concerns about him "spitting" in

court.

The repeated acknowledgment by both Williams' counsel and the trial court that Williams' competency was in question, coupled with Williams' own aberrant behavior in court, provided a "reason to doubt" that Williams was competent to stand trial. Consequently, the trial court did not abuse its discretion by ordering a competency examination.[6]

Both the United States Constitution and the Washington Constitution provide a criminal defendant with the right to a speedy public trial. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Our state constitution "requires a method of analysis substantially the same as the federal Sixth Amendment analysis and does not afford a defendant greater speedy trial rights." State v. Iniguez, 167 Wn.2d 273, 290, 217 P.3d 768 (2009). A defendant who is in custody pending trial is entitled to be tried within 60 days of arraignment. CrR 3.3(b)(1)(i), (c)(1). However, the time between when a competency examination is ordered and when a competency determination is made is excluded from this 60-day calculation. CrR 3.3(e)(1).

Williams was arraigned on July 27, 2012. On August 23, a competency examination was ordered. On October 23, an order of competency was entered and a trial date was scheduled for November 5.[7] Excluding from consideration

---

[6] Williams contends that it was an abuse of discretion to order a competency examination (1) off of the record, (2) without considering the input of either the prosecutor or defense counsel, (3) and without providing him notice or an opportunity to be heard. Adherence to these procedures is not dictated by any constitutional, statutory, or judicial authority.

[7] Williams' trial did not commence until April 10, 2013. However, the delay was attributable to Williams' motion to dismiss and repeated requests for replacement counsel.

the two-month time period during which Williams' competency was being evaluated reveals that Williams was brought to trial in a timely fashion, as described by rule. Given our conclusion that there was no abuse of discretion, and in view of CrR 3.3(e)(1), Williams' right to receive a speedy trial was not violated.

III

Williams next challenges the sufficiency of the evidence to support his conviction of malicious mischief in the second degree. He maintains that the State failed to adduce sufficient evidence to prove that his action of damaging the sprinkler head created a substantial risk of interruption or impairment of service rendered to the public. We disagree.

The prosecution must prove every element of the crime charged beyond a reasonable doubt. State v. Brown, 147 Wn.2d 330, 339, 58 P.3d 889 (2002). Thus, when reviewing a challenge to the sufficiency of the evidence, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt*.'" State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

"A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "In determining the sufficiency of the evidence, circumstantial evidence is not to be considered any less reliable than

direct evidence." State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Deference must be given to the trier of fact who resolves conflicting testimony and evaluates the credibility of witnesses and persuasiveness of material evidence." State v. Carver, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

Williams was charged by amended information, pursuant to RCW 9A.48.080(1)(b), with the crime of malicious mischief in the second degree.

> (1) A person is guilty of malicious mischief in the second degree if he or she knowingly and maliciously:
>
> . . .
>
> (b) Creates a substantial risk of interruption or impairment of service rendered to the public, by physically damaging or tampering with an emergency vehicle or property of the state, a political subdivision thereof, or a public utility or mode of public transportation, power, or communication.

RCW 9A.48.080(1)(b).

This statute "requires only that the defendant '[c]reates a substantial risk of interruption or impairment,' not that the defendant actually did interrupt or impair" service rendered to the public. State v. Turner, 167 Wn. App. 871, 877, 275 P.3d 356 (2012) (alteration in original) (quoting RCW 9A.48.080(1)(b)). Contrary to that which was intimated by Williams, the statute does not require a showing of "substantial impairment."

On appeal, Williams avers that the evidence was insufficient to prove beyond a reasonable doubt that he "created a substantial risk of interruption or impairment of services rendered to the public."[8] He relies on two Washington

---

[8] He concedes that sufficient evidence supports the other elements of the crime charged.

appellate court decisions: <u>Turner</u>, 167 Wn. App. 871, and <u>State v. Hernandez</u>, 120 Wn. App. 389, 85 P.3d 398 (2004). Only <u>Turner</u> squarely addressed the issue presented by this appeal. However, it does not support Williams' position.

As an initial matter, <u>Hernandez</u> is inapposite. In that case, the defendant spit several times in the back of a police vehicle, which caused an officer to spend about 15 minutes cleaning up the mess. <u>Hernandez</u>, 120 Wn. App. at 390-91. In holding that there was insufficient evidence that the defendant "*knowingly and maliciously* damaged or tampered with the police vehicle *or* that he consequently created a substantial risk of interruption or impairment of its service to the public," the court emphasized that the defendant "did not disrupt emergency services *by physically manipulating a device crucial to those services.*" <u>Hernandez</u>, 120 Wn. App. at 392 (emphasis added). Because the court's decision was based, in large part—if not wholly—on its conclusion that the defendant had not "damaged or tampered with the police vehicle," it is not instructive in resolving this issue.

On the other hand, <u>Turner</u> is instructive. In that case, the defendant broke a police vehicle's rear window, which caused the vehicle to be unavailable for one day. <u>Turner</u>, 167 Wn. App. at 875. In holding that there was sufficient evidence that the defendant "created a substantial risk of interrupting or impairing service to the public," the court concluded that the jury could have inferred "that having fewer patrol cars available may impair service to the public." <u>Turner</u>, 167 Wn. App. at 877-878.

Here, as in <u>Turner</u>, there was sufficient evidence to support Williams' conviction. The evidence showed that, as a result of Williams' actions, a jail cell was out of commission for around one and a half hours. During this time, two jail inmates were brought in to clean up the mess caused by Williams. The inmates, who were being supervised by Paddy, spent between 30 and 40 minutes cleaning. Additionally, Dobrava spent around one hour repairing the sprinkler. Furthermore, as a result of Williams' actions, the entire fire-suppression system was in a "trouble" state until the system was reset, which required Dobrava's expertise. In view of the foregoing evidence, the jury could have inferred—based on a common understanding of "impairment"—that the loss of use of a cell for over one hour, the diversion of prison resources to clean up the mess and repair the damage, the actual damage caused to the sprinkler, and the "trouble" state in which the fire-suppression system remained until it was reset by Dobrava—together—demonstrated a substantial risk of interruption or impairment of service rendered to the public. Accordingly, Williams is not entitled to appellate relief.

IV

Williams next contends that he was denied his right to receive a fair trial. This denial occurred, he avers, when the trial court refused to instruct the jury that malicious mischief in the third degree was a lesser-included offense of malicious mischief in the second degree under RCW 9A.48.080(1)(b). We disagree.[9]

---

[9] Williams does not assert that the trial court erred in refusing to instruct the jury that malicious mischief in the third degree constituted an inferior-degree crime. Accordingly, we do

In Washington, a defendant is entitled to an instruction on a lesser-included offense where the following two conditions are met: (1) "each of the elements of the lesser offense must be a necessary element of the offense charged," and (2) "the evidence in the case must support an inference that the lesser crime was committed." State v. Workman, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).

Our review is de novo. State v. Tamalini, 134 Wn.2d 725, 729, 953 P.2d 450 (1998) ("Because the trial court rejected Tamalini's proposed instruction on the basis that first and second degree manslaughter are not, as a matter of law, lesser included offenses of second degree felony murder, we review the claimed error de novo.").

When a defendant is charged with malicious mischief in the second degree pursuant to RCW 9A.48.080(1)(b), malicious mischief in the third degree does not constitute a lesser-included offense of the crime charged. When charged pursuant to RCW 9A.48.080(1)(b), a defendant may be convicted of malicious mischief in the second degree if he *either* physically damages an emergency vehicle or property of the state, *or* tampers with an emergency vehicle or property of the state. Thus, causing "physical damage" is not a necessary element of malicious mischief in the second degree under RCW 9A.48.080(1)(b). However, under RCW 9A.48.090(1)(a), a defendant may be

---

not address that issue. Cf. State v. Tamalini, 134 Wn.2d 725, 730-31, 953 P.2d 450 (1998) (where the defendant's proposed jury instruction did not contain the words "'inferior degree,'" our Supreme Court nevertheless considered the defendant's assertion on appeal that the trial court erred by refusing to give the proposed inferior degree instruction "because the terms 'inferior degree offense' and 'lesser included offense' have often been used interchangeably").

convicted of malicious mischief in the third degree *only* if he physically damages the property of another. Accordingly, given that it would be possible for a defendant to commit malicious mischief in the second degree when charged pursuant to RCW 9A.48.080(1)(b) without committing malicious mischief in the third degree, the latter is not a lesser-included offense of the former, and the trial court did not err by refusing to instruct the jury as such.

Affirmed.

Dwyer, J.

We concur:

Leach, J.

Becker, J.