IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35918-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CORY EVANS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. —Cory Evans appeals his conviction for possession of a stolen

vehicle. He contends the evidence was insufficient to support the conviction. We affirm

the conviction, but remand for the trial court to strike two court costs.

FACTS

This appeal concerns a stolen 2009 Kawasaki 250 motorcycle. John Richardson, a

resident of Aberdeen, was the registered owner of the motorcycle. Richardson's son,

who lived in Spokane, used the cycle to commute to school. Richardson paid $4,500 for

the motorcycle in 2010. Richardson valued the motorcycle at $3446 when it was stolen,

but he testified the motorcycle's condition was "like new" with all original factory parts.

Richardson never gave defendant Cory Evans permission to possess the motorcycle.

On the morning of April 28, 2017, uniformed Spokane Police Department

Sergeant Kurt Vigesaa patrolled near Pacific and Ralph when he observed a helmeted individual sitting at the side of the road on a parked motorcycle with no license plate. This sight drew Vigesaa's attention because he knew that stolen motorcycles often display no license plates. He made a U-turn, fully activated the emergency lights on his gray Dodge Charger patrol vehicle, and stopped seven to ten feet in front of the motorcycle. The rider, later determined to be Cory Evans, started the motorcycle engine and attempted to evade the officer by driving around the patrol car. Evans and the motorcycle fell to the ground. Sergeant Vigesaa exited his patrol vehicle, stood face-to-face with Evans, and pushed him away from the motorcycle. Evans fled across an empty field. Sergeant Vigesaa gave chase on foot and apprehended Evans near a restaurant.

Sergeant Kurt Vigesaa administered *Miranda* warnings to Cory Evans. Evans agreed to answer questions. According to the Vigesaa, Evans declared that he purchased the motorcycle from a friend for $100 two to three weeks earlier. He conceded he lacked paperwork for the purchase. When Sergeant Vigesaa asked if the motorcycle could be stolen, Evans responded that it "could be stolen because he bought it so cheap." Report of Proceedings (RP) (January 9, 2018) at 70. Evans refused to name the friend who sold the motorcycle to him. A vehicle identification number check confirmed the motorcycle was reported stolen. The motorcycle was John Richardson's 2009 Kawasaki 250 motorcycle.

According to Cory Evans, the motorcycle sat in pieces when he purchased it for

2

$500, a few weeks before encountering Sergeant Kurt Vigesaa. He deemed $500 to be a "decent price" and he hoped to restore the motorcycle. RP at 87. He performed considerable work in reassembling the motorcycle to make it operable again, including replacing the ignition.

John Richardson viewed the motorcycle after its recovery. Richardson observed that the ignition switch and ignition holder had been removed, the original headlights were missing, the gas cap had been damaged so that it no longer required a key to open, and there were visible grind and cut marks on the bike. He estimated the total damage to the motorcycle of approximately $600.

## PROCEDURE

The State of Washington charged Cory Evans with possession of a stolen vehicle. The prosecution proceeded to a jury trial.

During trial, Cory Evans testified that he ran from Sergeant Kurt Vigesaa on April 28 because he did not know Vigesaa to be a police officer and thought Vigesaa attempted to strike him with a car. He explained:

> A gray Dodge Charger came driving at me and it looked like he was trying to hit me so I tried to start the bike and get around it and he tried to run me off the road. Then someone jumped out of the vehicle, shoved me, and then started chasing me so I ran.

RP at 90. He averred that he finally stopped running when his pursuer yelled "police."

During trial, Cory Evans further testified that he told Sergeant Kurt Vigesaa he

3

paid $500 for the motorcycle and that he possessed a bill of sale. Evans denied that he told Vigesaa the bike was stolen. He also denied telling the officer that he paid $100 for the motorcycle. Evans testified that he purchased the motorcycle from an acquaintance, Darryl Carrillo.

The jury found Cory Evans guilty as charged. The trial court imposed a 57-month standard range sentence. The court also imposed $800 in legal financial obligations comprised of a $200 criminal filing fee, a $500 victim assessment, and a $100 deoxyribonucleic acid (DNA) collection fee.

## ANALYSIS

On appeal, Cory Evans contends the evidence was insufficient to support his conviction for possession of a stolen vehicle. He argues the State failed to prove the essential element that he knew the motorcycle was stolen.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that a trier of fact can draw from the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the

4

persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850

(1990).

"A person is guilty of possession of a stolen vehicle if he or she possess

[possesses] a stolen motor vehicle." RCW 9A.56.068(1) (alteration in original).

Possessing a stolen vehicle is defined as "knowingly to receive, retain, possess, conceal,

or dispose of stolen property knowing that it has been stolen and to withhold or

appropriate the same to the use of any person other than the true owner." RCW

9A.56.140(1). Thus, the State must prove the defendant acted with knowledge that the

motor vehicle had been stolen. *See State v. Porter*, 186 Wn.2d 85, 90, 375 P.3d 664

(2016).

The court instructed Mr. Evans's jury in accordance with the above principles.

The court also gave the following instruction defining knowledge:

> A person knows or acts knowingly or with knowledge with respect
> to a fact or circumstance when he or she is aware of that fact or
> circumstance. It is not necessary that the person know that the fact or
> circumstances is defined by law as being unlawful or an element of a crime.
> If a person has information that would lead a reasonable person in
> the same situation to believe that a fact exists, the jury is permitted but not
> required to find that he or she acted with knowledge of that fact.
> When acting knowingly as to a particular fact is required to establish
> an element of a crime, the element is also established if a person acts
> intentionally as to that fact.

Clerk's Papers (CP) at 78.

In contending the evidence was insufficient to prove he knew the motorcycle was

stolen, Cory Evans argues that, even if the motorcycle was missing a license plate and title and was significantly damaged, and even if he told Sergeant Kurt Vigesaa that the motorcycle could have been stolen, this acknowledgment does not mean he actually knew the cycle was stolen. He emphasizes his testimony that he purchased the motorcycle to repair it and did not think it could be stolen. He highlights his explanation at trial that the bike sat in pieces, he concluded he could repair it, he paid $500 for it, and the price was "decent." He refers to the knowledge instruction under which the jury was "permitted but not required to find" that he acted with information that would lead a reasonable person in the same situation to believe the motorcycle was stolen. Under the circumstances, he concludes the State presented no evidence from which the jury could determine beyond a reasonable doubt that he knew the motorcycle was stolen. We disagree.

Mere possession of stolen property is insufficient to support a conviction for possession of a stolen vehicle under RCW 9A.56.068. *State v. Couet*, 71 Wn.2d 773, 775, 430 P.2d 974 (1967). But possession of recently stolen property combined with "slight corroborative evidence of other inculpatory circumstances tending to support guilt will sustain a conviction for possession of stolen property." *State v. Portee*, 25 Wn.2d 246, 252, 170 P.2d 326 (1946). Such corroborative evidence may include a false or improbable explanation of possession, flight, or the presence of the accused near the scene of the crime. *State v. Q.D.*, 102 Wn.2d 19, 28, 685 P.2d 557 (1984); *State v.*

6

*Womble*, 93 Wn. App. 599, 604, 969 P.2d 1097 (1999) (absence of a plausible

explanation is a corroborating circumstance); *State v. Hudson*, 56 Wn. App. 490, 495,

784 P.2d 533 (1990) (flight from the police is a sufficient corroborating circumstance).

Purchasing the stolen property at an unreasonably low price may also be a corroborating

circumstance. *State v. Smyth*, 7 Wn. App. 50, 53, 499 P.2d 63 (1972).

The State's evidence showed that Cory Evans possessed the stolen motorcycle

without the owner John Richardson's permission. Evans first attempted to evade and

later fled from Sergeant Kurt Vigesaa, who was in uniform with his patrol car's

emergency lights fully activated. Evans stopped running from the officer when he

became too winded to continue. He told the officer he thought the motorcycle could be

stolen because he purchased it at the "cheap" price of $100, a deep discount from its

$3446 value. He refused to divulge the seller's name to Sergeant Vigesaa. The

motorcycle had no license plate or ownership paperwork and no temporary registration

for the vehicle. The motorcycle's factory ignition was missing and the locking gas cap

altered so the original key was no longer required to access the fuel tank and drive the

vehicle. In these circumstances, the evidence sufficed for the jury to reasonably infer that

Evans acted with knowledge that the motorcycle in his possession was stolen.

The jury could reject, as incredible or implausible, Cory Evans' explanations as to

why he fled from the police officer and the circumstances of his claimed lawful purchase

of the damaged and disassembled motorcycle for $500. We do not disturb the jury's

credibility determinations on appeal. *State v. Camarillo*, 115 Wn.2d at 71.

### STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Cory Evans raises two issues in a statement of additional grounds for review. First, he states that his first attorney, whom the court removed from the case due to ineffective assistance, possessed the original bill of sale but gave his new attorney only an inadmissible photocopy. He suggests he was prejudiced by the failure to have the original available as defense evidence. But Evans does not include the purported original bill of sale or its photocopy in our record. He does not support his factual assertions to any section of the record. Evans's proper remedy in this circumstance is to bring a personal restraint petition with evidence to support the claim. *State v. Turner*, 167 Wn. App. 871, 881, 275 P.3d 356 (2012).

Second, Cory Evans states his trial counsel missed all pretrial hearings and the court started the trial before he (Evans) had a chance to review the case. He argues these irregularities violated due process. Nevertheless, his assertions find no support in the record. We therefore decline further review. RAP 10.10(c).

### MOTION TO STRIKE CRIMINAL FILING FEE AND DNA FEE

Citing *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), Cory Evans moves to strike the $200 criminal filing fee and the $100 DNA collection fee imposed by the trial court at sentencing. House Bill 1783, which became effective June 7, 2018, prohibits trial courts from imposing certain legal financial obligations on defendants who

8

are indigent at the time of sentencing. LAWS OF 2018, ch. 269, § 6(3). *Ramirez* held that the amendment applies prospectively and is applicable to cases pending on direct review and not final when the amendment was enacted. *Ramirez*, 191 Wn.2d at 747. Among the changes was an amendment to former RCW 36.18.020(2)(h) to prohibit the imposition of the $200 criminal filing fee on indigent defendants, and an amendment to former RCW 43.43.7541 to make the DNA database fee no longer mandatory if the State has previously collected the offender's DNA as a result of a prior conviction. LAWS OF 2018, ch. 269, §§ 17(2)(h), 18.

Cory Evans' motion is controlled by *Ramirez*. He was indigent at the time of sentencing and remains indigent on appeal. His lengthy felony conviction record indicates a DNA fee has previously been collected. Accordingly, we grant Evans' motion and direct the trial court to strike the $200 filing fee and $100 DNA fee from the judgment and sentence.

### APPELLATE COSTS

Cory Evans objects to the imposition of appellate costs under RAP 14.2 should the State prevail on appeal. Evans submitted a declaration supporting his continued indigence. The State does not question the accuracy of his information or claim any change in circumstances. Accordingly, we grant Evans' request to deny appellate costs to the State.

No. 35918-2-III
*State v. Evans*

CONCLUSION

We affirm Cory Evans' conviction. We remand the case for the trial court to strike the $200 filing fee and $100 DNA collection fee. Evans need not be present in court at any hearing conducted to strike the two legal financial obligations. We deny the State costs on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Korsmo, J.

10